**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| ALLIED SERVICES, LLC, | ) | |
| d/b/a Republic Services of Kansas City, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| SMASH MY TRASH, LLC, | ) | |
| | ) | |
| Serve: Taft Service Solutions Corp. | ) | |
| Registered Agent | ) | |
| One Indiana Square, Suite 3500 | ) | |
| Indianapolis, IN 46204, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SMASH FRANCHISE PARTNERS, LLC, | ) | |
| | ) | |
| Serve: Taft Service Solutions Corp. | ) | |
| Registered Agent | ) | |
| One Indiana Square, Suite 3500 | ) | |
| Indianapolis, IN 46204, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SMT KC LLC, | ) | |
| | ) | |
| Serve: InteGrit Ops LLC | ) | |
| Registered Agent | ) | |
| 9800 Metcalf Avenue, Suite 500 | ) | |
| Overland Park, KS 66212, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>VERIFIED COMPLAINT</u>

Allied Services, LLC, d/b/a Republic Services of Kansas City, for its Complaint

against Defendants, Smash My Trash, LLC, Smash Franchise Partners, LLC, and SMT KC LLC

(collectively, "**<u>Smash</u>**"), states:

## PARTIES

1.        Allied Services, LLC, d/b/a Republic Services of Kansas City ("**Republic**") is a Delaware limited liability company registered to do business in the State of Missouri with its principal place of business in Phoenix, Arizona. The company's sole member is Allied Waste North America, LLC, a Delaware limited liability company with its principal place of business in Phoenix, Arizona. Republic Services, Inc., a Delaware corporation with its headquarters and principal place of business in Phoenix, Arizona, is the sole member of Allied Waste North America, LLC.

2.        Smash My Trash, LLC ("**SMT**") is an Indiana limited liability company with its principal place of business in Carmel, Indiana, that may be served through its Registered Agent, Taft Service Solutions Corp., One Indiana Square, Suite 3500, Indianapolis, Indiana 46204.

3.        Smash Franchise Partners, LLC ("**Franchise**") is an Indiana limited liability company with its principal place of business in Carmel, Indiana, that may be served through its Registered Agent, Taft Service Solutions Corp., One Indiana Square, Suite 3500, Indianapolis, Indiana 46204.

4.        SMT KC LLC ("**SMT KC**") is a Kansas limited liability company with its principal place of business in Prairie Village, Kansas, that may be served through its Registered Agent, InteGrit Ops LLC, 9800 Metcalf Avenue, Suite 500, Overland Park, Kansas 66212.

## JURISDICTION AND VENUE

5.        The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

OP 1975739.1

6.     Additionally, the Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     The Court has personal jurisdiction over Defendants because they have transacted business, entered into contracts, and committed tortious acts in the State of Missouri. RSMo 506.500.1(1)-(3).

8.     Smash advertises its services and provides false and misleading information to consumers in the State of Missouri. *See* Smash Locations, https://www.smashmytrash.com/locations/#1601866655001-b1809230-e012 (last visited April 13, 2021), and Smashing FAQ's, https://www.smashmytrash.com/smashing-101/#1582753532656-d48a438a-e575 (last visited April 13, 2021).

9.     Franchise has marketed and entered into contracts to sell Smash franchises in the State of Missouri. *See* http://smashfranchise.com/ (last visited April 13, 2021).

10.     SMT KC owns a Smash franchise that operates throughout the Kansas City metropolitan area, including Jackson, Clay, Platte, and Cass counties, as shown in the following map of its territory posted on Smash's website.

3



*See* Serving the Kansas City Area, https://www.smashmytrash.com/ks/kansas-city/ (last visited

April 13, 2021).

11.     At least four franchisees, including SMT KC, operate franchises under the name

"Smash My Trash" in the State of Missouri. (Ex. A, Registrations of Fictitious Name

(identifying SMT-STL, LLC, SOMO SMT LLC, and SMT Ventures, LLC as all operating under

the fictitious name "Smash My Trash" in Missouri).)

12.     The claims asserted against Defendants arise out of and relate to their activities

in, directed at, and producing consequences in the State of Missouri.

13.     Defendants have targeted their wrongful actions toward Republic and its

customers in Missouri, causing and threatening to cause substantial injury.

14.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because

a substantial part of the events giving rise to the claims asserted in this action occurred in

4

the Western Division of the Western District of Missouri and the harm to Republic has occurred and will continue to occur in this Division.

**FACTS COMMON TO ALL COUNTS**

15.     Republic provides recycling and waste services to residential and business customers in the Kansas City metropolitan area.

16.     Republic supplies dumpsters and open top roll-off waste containers that are conspicuously painted blue and display the company's trademarked name and crimson and white logo ("**Equipment**") for the use of its business customers.

17.     An example of the Equipment that Republic provides its business customers is shown below.



18.     The Equipment is designed and constructed for normal use, with a 7-gauge floor and 12-gauge sides. Rectangular Open Top Roll Off Dumpsters, https://www.wastequip.com/products/dumpsters-waste-containers/rectangular-open-top-roll-dumpsters (last visited April 13, 2021).

19.     Specifically, the Equipment is designed and constructed only to collect ordinary waste and be hauled away.

20.     Republic's cost for purchasing new, standard open top roll-off waste containers is approximately $5,000 each.

21.     The Equipment at all times remains Republic's property.

5

22.    The Equipment is required for Republic's business, and Republic pays to purchase and maintain the containers, covers all costs to install and remove them from customer locations, and assumes all associated risk.

23.    These expenses are part of Republic's overhead and affect the rates charged to customers.

24.    Business customers typically enter into a Customer Services Agreement ("**Agreement**") with Republic.

25.    The Agreement reflects and confirms that the Equipment is Republic's property and that business customers are liable for all loss or damage to the Equipment, excluding normal wear and tear.

26.    In particular, the Agreement provides:

**RESPONSIBILITY FOR EQUIPMENT; ACCESS.** Any equipment Company furnishes shall remain Company's property. Customer shall be liable for all loss or damage to such equipment (except for normal wear and tear and for loss or damage resulting from Company's handling of the equipment). Customer shall use the equipment only for its proper and intended purpose and shall not overload (by weight or volume), move or alter the equipment. **CUSTOMER SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS COMPANY FROM AND AGAINST ALL LOSSESS ARISING FROM ANY INJURY OR DEATH TO PERSONS OR DAMAGE TO PROPERTY (INCLUDING THE EQUIPMENT) ARISING OUT OF CUSTOMER'S USE, OPERATION OR POSSESSION OF THE EQUIPMENT.** Customer shall provide safe, unobstructed access to the equipment on the scheduled collection day. Company may charge an additional fee for any additional collection service required by Customer's failure to provide access.

27.    Republic's business customers typically enter into Agreements with multi-year terms that automatically renew absent a timely notice of termination.

28.    Many business customers have Agreements with Republic that provide for scheduled service, such as pick up twice a week.

6

29.     Heavy duty and extra heavy duty open top roll-off waste containers, with reinforced floors and sides, are available for more intense applications, including construction and demolition. Rectangular Open Top Roll Off Dumpsters, https://www.wastequip.com/products/dumpsters-waste-containers/rectangular-open-top-roll-dumpsters (last visited April 13, 2021).

30.     On request, Republic also supplies compactors specifically designed for waste compaction to its business customers for an additional charge.

31.     The compactors generally function with a large "ram" that compresses the waste onto the compactor floor and then push the compacted waste into the associated container for holding. *See* Commercial Trash Compactors, https://www.wastequip.com/products/commercial-trash-compactors (last visited April 13, 2021).

32.     Smash provides mobile waste compaction services in the Kansas City metropolitan area using "Smash Machines."

33.     "Smash Machines" are 25,000-pound Kenworth T270 Trucks outfitted with hydraulic booms and three-ton spiked, rotating metal drums, as shown in the photograph below:

OP 1975739.1



34.     Smash's website describes its "On-Site Smash Service" as:

We come to you, we Smash *your* containers, we leave. No equipment to buy, no vendors to fire, we don't even require a restrictive contract for services.

Smash Services, https://www.smashmytrash.com/smash-services/ (last visited April 13, 2021) (emphasis added).

35.     Further, on its website, Smash falsely advertises that consumers have the legal right to use its mobile waste compaction services.

36.     Smash advises consumers:

**3.** Will my waste company let me Smash my trash?

It's not their waste, it's yours. Well established legal doctrines protect your rights to manage your waste while under your control at your facility. This includes the right to Smash your trash.

Smashing FAQ's, https://www.smashmytrash.com/smashing-101/ (last visited April 13, 2021).

37.     Without notice to or authorization from Republic, Smash has solicited Republic's customers to provide mobile waste compaction services that utilize, trespass upon, and damage Republic's Equipment.

8

38.     The services that Smash provides, forcefully breaking and shredding waste inside Republic's dumpsters and open top roll-off waste containers with a three-ton, spiked, rotating metal drum mounted on a hydraulic boom, are such that physical damage to the Equipment is inherent in the compacting process.

39.     Indeed, Smash anticipates that it will damage Republic's Equipment, as Section 3(c) of Smash's Terms of Service on its website states:

> (**C**) Under no circumstances will SMT or its officers, directors, employees, parents, partners, successors, agents, distribution partners, affiliates, subsidiaries, or their related companies be liable for any damage, repairs, or costs to any trash dumpster, bin, container or similar receptacle (collectively, "Dumpsters") of any kind owned by You or any third party and used with the Services. You agree and acknowledge that you are solely responsible for the safekeeping of any Dumpsters used in connection with the Services. You agree to assume all risks in connection with Dumpsters, regardless of fault, including, without limitation, risk of use, risk of loss, risk of theft, risk of damage or destruction. You further agree to indemnify and hold harmless SMT and its officers, directors, employees, parents, partners, successors, agents, distribution partners, affiliate, subsidiaries, and their related companies for any third-party claims, losses, or damages related to any Dumpsters or the Services, and as further set forth in Section 7 ("Indemnification"). The above representations and limitations of liability are in addition to Sections 8 and 9, as set forth below.

Terms of Service, https://www.smashmytrash.com/terms-of-service/ (last visited April 13, 2021).

40.     During and as part of Smash's service, Smash Machines invade the interior of the Equipment and exert considerable force smashing the dumpsters and open top roll-off waste containers.

41.     Smash cannot provide services to Republic's business customers without the Equipment.

42.     In fact, Smash acknowledges that it "uses" dumpsters, bins, containers, and similar receptacles owned by third parties such as Republic as part of providing its mobile

9

compaction services. *See* Terms of Service, https://www.smashmytrash.com/terms-of-service/ (last visited April 13, 2021) ("Under no circumstances will SMT or its officers, directors, employees, parents, partners, successors, agents, distribution partners, affiliates, subsidiaries, or their related companies be liable for any damage, repairs, or costs to any trash dumpster, bin, container or similar receptacle (collectively, "Dumpsters") of any kind *owned by You or any third party* and *used with the Services*.") (emphasis added).

43.     However, Smash does not pay to purchase or maintain the Equipment and therefore does not have to include those costs as part of its overhead, thereby benefiting and profiting from utilizing Republic's property.

44.     Smash's wrongful use of the Equipment has harmed and will cause further harm to Republic and its property.

45.     The unauthorized and unlawful use of the Equipment by Smash impairs and interferes with Republic's rights as owner to possess and use the property as it chooses.

46.     Smash's misappropriation likewise impairs and infringes Republic's fundamental "right to exclude" others from using its property. PROPERTY, Black's Law Dictionary (11th ed. 2019).

47.     The "Smash Machines" exert pressure in localized portions of the Equipment, leading to dents and punctures by larger, heavier waste items pushing on the bottom and sides of the Equipment due to the compaction.

48.     Further, the intentional forces being applied to the Equipment by "Smash Machines" reduce the strength of the Equipment and increase rusting and bulging.

OP 1975739.1

49.     The damage to the Equipment requires increased maintenance and reduces its useful life, causing Republic significant damages.

50.     Smash's services have caused and will continue to cause the Equipment to exceed its payload rating established by the manufacturer by heavily compacting waste in the Equipment, leading to substantially greater weights that exceed the rating when the additional force of the three-ton spiked, rotating metal drums is applied.

51.     In addition, Smash's unauthorized and tortious use of the Equipment puts Republic at risk of violating local ordinances requiring that trash receptacles and equipment be properly maintained.

52.     For example, Kansas City, Missouri, Code of Ordinances Art. I, § 62-4, mandates that refuse containers "be so constructed and maintained as to prevent the dispersal of refuse placed therein upon the premises served, upon adjacent premises, or upon adjacent public rights-of-way" and that they "be continuously maintained in a clean, neat and sanitary condition, free of structural defects."

53.     Smash's unlawful use of the Equipment further puts Republic at risk of overloading the weight of its open-top containers and violating highway regulations, increasing Republic's potential liability and subjecting its drivers to possible fines and suspensions.

54.     For instance, the Equipment at one customer's location had historically weighed between three and five tons when being serviced by Republic, but was found on March 24, 2021, to weigh over ten tons following Smash's mobile waste compacting.

55.     Smash's misappropriation of the Equipment may also prevent Republic from timely completing its routes (whether due to changes necessary to accommodate additional

11

tonnage or waiting for Smash at a customer's location), which would negatively affect Republic's operations and customer relationships.

56.     Republic's drivers are unionized and have limitations on how long they can work, thereby preventing Republic from simply extending the workday to address any delays caused by Smash.

57.     The mobile waste compaction services that Smash is tortiously providing to Republic's business customers are negatively affecting Republic's relationships with those customers.

58.     Republic's business customers have contacted it to cancel and amend Agreements, and in some instances, they have refused to follow Republic's direction that the Equipment may not be used by Smash for its mobile waste compaction services.

59.     Despite Republic's demand that Smash "stop providing [its] services to customers who possess open top waste containers owned by Republic," Smash continues to use Republic's Equipment to provide waste compaction services to its customers in the Kansas City metropolitan area.

60.     Indeed, Smash has argued, without legal support, that it "does not need Republic's consent to smash trash," even though it is using Republic's Equipment.

61.     Smash has also claimed that its "Smash Machines" do not cause damage to the Equipment, contending that Smash has "developed careful procedures to avoid any damage to containers."

OP 1975739.1

62.     Notwithstanding that the "Smash Machines" and the mobile compaction services provided by Smash actually do damage the Equipment, that fact does not justify or excuse Smash's unauthorized and unlawful use of Republic's property.

63.     Republic cannot be forced to allow a third party to utilize its property and then constantly police whether the Equipment has been damaged as a result.

64.     In keeping with a "best defense is a good offense" strategy, Smash has additionally threatened to pursue claims against Republic for tortiously interefering with Smash's purported right to "smash trash" and defaming Smash by advising customers that the mobile compaction services damage the Equipment.

65.     Republic has no adequate remedy at law to compensate it for the damage being caused by Smash and will suffer irreparable harm if preliminary and permanent injunctive relief does not issue to prevent Smash from misappropriating and damaging Republic's Equipment and tortiously interfering with its contracts and business relationships with its customers.

66.     In particular, due to Smash's tortious conduct, Republic will suffer confusion by its business customers and a loss of goodwill and reputation with its customers that is not quantifiable.

67.     Smash has put Republic directly at odds with the business customers that Smash has improperly solicited.

68.     The tortious interference has forced Republic to debate and defend its position with customers that Smash does not have the ability to utilize the Equipment for waste compaction services and that the Smash Machines cause damage to Republic's dumpsters and open top roll-off waste containers.

OP 1975739.1

69.     Smash is creating distrust between Republic and its business customers by falsely stating that they have the "right to Smash [their] trash" while also suggesting that they are "trapped by a one-sided contract with [their] waste removal company" and being "ripped off by endless fees and overage charges." *See* https://www.smashmytrash.com/ (last visited April 13, 2021).

70.     Accordingly, Smash is breeding disputes between Republic and its business customers, thereby compelling Republic to dedicate additional time and energy to managing and protecting those relationships.

71.     On its website, Smash states that its "Mission" is to "fundamentally disrupt commercial material management by redefining the business model." *About Us*, https://www.smashmytrash.com/about-us/ (last visited April 13, 2021).

72.     Smash is seeking to achieve its goal by intentionally disrupting Republic's relationships with its business customers.

73.     The balance between the harm to Republic and the possible injury that granting injunctive relief would inflict on Smash weighs appreciably in Republic's favor because its established goodwill and existing customer relationships will be negatively affected, as opposed to Smash's potential future business.

74.     The issuance of an injunction would be in the public's interest because it would serve the important goal of protecting Republic's property and contract rights and prohibiting Smash's false and misleading advertising.

14

# CAUSES OF ACTION

## Count I – Trespass to Chattels

75.     Republic re-alleges and incorporates by reference all prior allegations as if fully stated herein.

76.     Republic owns and has the right to possess the Equipment provided to its business customers.

77.     Under Missouri law, the Equipment is deemed to always be in Republic's possession.

78.     Smash's unauthorized use of the Equipment to provide mobile waste compaction services to Republic's customers has intentionally disturbed and interfered with the Equipment.

79.     By using the Equipment to smash waste for its own business purposes, Smash has exercised control and authority over the dumpsters and open top roll-off waste containers inconsistent with Republic's possession and has deprived Republic of the full use and possession of the Equipment.

80.     Specifically, when Smash compacts solid waste inside the Equipment, it is intentionally and tortiously interfering with Republic's possession and use of its personal property.

81.     Smash has also prevented Republic from accessing it Equipment during regularly scheduled hauls.

OP 1975739.1

82.	On February 12, 2021, as reflected in the photograph below, Republic was prevented from accessing its Equipment at 4600 NW 41st Street, Riverside, Missouri 64150, due to Smash intentionally and tortiously interfering with its container.



83.	Subsequently, on March 31, 2021, as shown in the photograph below, Republic was again prevented from accessing its Equipment at 8811 Prospect Avenue, Kansas City, Missouri 64132, due to Smash intentionally and tortiously interfering with its container.

OP 1975739.1



84.     Republic has been harmed and suffered more than $75,000 in damages due to Smash's interference with its Equipment, including, but not limited to, physical harm to its dumpsters and open top roll-off waste containers.

### Count II – Conversion

85.     Republic re-alleges and incorporates by reference all prior allegations as if fully stated herein.

86.     Republic owns and at all times has been entitled to possess the Equipment.

87.     Smash has taken possession of Republic's Equipment through its mobile "Smash Machines" with the intent to exercise some control over the dumpsters and open top roll-off waste containers.

OP 1975739.1

88.     Smash's intentional conduct in utilizing and assuming control over the Equipment to smash waste for its own business purposes has unlawfully deprived Republic of its right to exclusive and quiet possession of its personal property.

89.     Republic has been harmed and suffered more than $75,000 in damages due to Smash's conversion of its Equipment, including, but not limited to, physical harm to its dumpsters and open top roll-off waste containers.

## Count III – Tortious Interference

90.     Republic re-alleges and incorporates by reference all prior allegations as if fully stated herein.

91.     The Agreement makes plain that the Equipment remains Republic's exclusive property throughout the term.

92.     Additionally, in the Agreement, business customers expressly promise not to overload containers by weight or volume, nor to alter them in any way.

93.     Smash knows of Republic's contracts and business relationships with its customers through the presence of the Equipment, which clearly bears the company's trademarked name and crimson and white logo.

94.     Without justification, Smash intentionally interfered with Republic's contracts by inducing or causing its customers to breach their service agreements by allowing Smash to misuse, overload, and damage Republic's Equipment.

95.     This interference has also harmed Republic by interrupting regularly scheduled hauls, which in one case resulted in Republic driving to the customer's location only to be told that no service was necessary because the client had contracted with Smash.

OP 1975739.1

96.     Smash acted with the intent to cause economic harm to Republic by damaging and interfering with Republic's relationships with its customers.

97.     On its website, Smash states that its "Mission" is to "fundamentally disrupt commercial material management by redefining the business model." About Us, https://www.smashmytrash.com/about-us/ (last visited April 13, 2021) ("Waste is one of the last industries to embrace true disruptive innovation. We're doing our part to move the industry forward by introducing our disruptive technology and services.").

98.     But for Smash's conduct, including, without limitation, Smash's misuse of the Equipment, Republic was reasonably certain to have continued, strong relationships with its customers.

99.     Republic has been harmed and suffered more than $75,000 in damages due to Smash's intentional actions, including, without limitation, by customers seeking to modify the terms and conditions of their Agreements.

## Count IV – False Advertising

100.    Republic re-alleges and incorporates by reference all prior allegations as if fully stated herein.

101.    Under Missouri law, consumers do not have the right to utilize Smash's mobile waste compaction services if it involves or requires the unauthorized use of property owned by a third party.

102.    On its website, Smash falsely represents to consumers that they have the absolute "right to Smash [their] trash," as reflected in the snip below.

19

**3.** Will my waste company let me Smash my trash?

It's not their waste, it's yours. Well established legal doctrines protect your rights to manage your waste while under your control at your facility. This includes the right to Smash your trash.

Smashing FAQ's, https://www.smashmytrash.com/smashing-101/ (last visited April 13, 2021).

103.     Smash has also misleadingly suggested to Republic's business customers that it partners with haulers, implying that Republic has approved or is somehow benefiting from the mobile waste compaction services that Smash provides.

104.     Hence, Smash has falsely led Republic's business customers to believe that the company is both aware of and has no objection to Smash's misuse of the Equipment and also that Republic's customers nevertheless have the unfettered "right to Smash [their] trash." *Id.*

105.     Smash's website previously included embedded video clips depicting "Smash Machines" compacting waste inside Republic's Equipment.

106.     Customer confusion was created by Smash's videos.

107.     Smash's false and misleading statements and advertising violate Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

108.     Specifically, Smash has made false and misleading statements of fact in its commercial advertising and promotions that deceive or are likely to deceive Republic's business customers in a material way in interstate commerce.

109.     Republic's business customers, due to Smash's false and misleading statements posted on its website and communicated during demonstrations and sales calls, are led to believe that they are legally entitled to utilize Republic's containers to have their waste compacted by Smash's mobile compaction service.

110.     Smash's false and misleading statements used to advertise and promote its services misrepresent the legal nature and ability of Smash to provide—and customers to receive—mobile waste compaction services.

111.     The false and misleading statements made by Smash have caused or are likely to cause competitive and commercial injury to Republic.

112.     Additionally, Smash's posting of video clips showing Republic's Equipment on its website and its false representation that it partners with waste companies is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Smash with Republic.

113.     Republic has been harmed and suffered more than $75,000 in damages due to Smash's intentional actions, including, without limitation, by business customers believing that they are legally entitled to authorize Smash to provide waste compacting services using the Equipment and that Republic either will not or has no cause to object.

114.     These false beliefs have interfered with and negatively affected Republic's relationships with its business customers.

## Count V - Civil Conspiracy

115.     Republic re-alleges and incorporates by reference all prior allegations as if fully stated herein.

116.     SMT, Franchise, and SMT KC acted in concert for the purpose of improperly interfering with Republic's contracts and business relationships with its business customers.

117.     Specifically, with the unlawful objective of interfering with Republic's contracts and business relationships and misusing its Equipment, and after a meeting of the minds,

21

Defendants actively solicited business from Republic's business customers and misappropriated its dumpsters and open top roll-off waste containers in furtherance of their conspiracy.

118.    Republic has been harmed and suffered more than $75,000 in damages due to SMT, Franchise, and SMT KC's civil conspiracy.

## Count VI – Declaratory Judgment

119.    Republic re-alleges and incorporates by reference all prior allegations as if fully stated herein.

120.    The Declaratory Judgment Act provides that in a case of "actual controversy within its jurisdiction," the Court, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

121.    There is a substantial controversy between Republic and Defendants regarding Smash's ability to utilize the Equipment for its own business purposes, to provide mobile waste compaction services to Republic's customers, and to represent that its customers have the right to receive those services.

122.    Smash has asserted that it has the right to use the Equipment and provide mobile waste compaction services to Republic's customers.

123.    Moreover, Smash has argued that Republic is unlawfully interfering with Smash's "contractual and business relationships."

124.    Smash has specifically asserted that Republic informing its business customers that Smash's services cause damage to the Equipment supports a "strong claim" for tortious interference.

22

125.     The dispute between Republic and Smash is definite and concrete and touches the legal relations of parties having adverse legal interests.

126.     Further, the controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, along with preliminary and permanent injunctive relief.

127.     Republic has incurred substantial attorneys' fees to protect its rights and interests, and it is entitled to recover those fees under 28 U.S.C. § 2202.

WHEREFORE, Plaintiff, Allied Services, LLC, d/b/a Republic Services of Kansas City, respectfully requests that the Court enter an Order:

A.     Declaring the rights and other legal relations between Plaintiff and Defendants, including, but not limited to, declaring that Defendants have no legal right or ability to (1) utilize Plaintiff's dumpsters and open top roll-off waste containers to provide mobile waste compaction services or for any other purpose, or (2) solicit Republic's business customers for mobile waste compaction services and state or represent to potential customers that they have the legal right to "smash [their] trash" and receive Smash's services;

B.     Preliminarily and permanently enjoining Defendants, their officers, agents, servants, and employees, and all others who are in active concert or participation with them, from (1) utilizing Plaintiff's dumpsters and open top roll-off waste containers for any purpose, including, without limitation, for providing waste compaction services, (2) improperly soliciting and providing smashing services to Plaintiff's existing business customers; and (3) supplying false and misleading information to consumers in the State of Missouri.

OP 1975739.1

C.  Entering judgment in Plaintiff's favor and against Defendants for damages in excess of $75,000 in an amount to be determined at trial, together with interest as allowed by law;

D.  Awarding Plaintiff its costs and expenses, including, without limitation, reasonable attorneys' fees as allowed by law, incurred in prosecuting this action;

E.  Awarding punitive damages to Plaintiff in light of Defendants' intentional, egregious conduct; and

F.  Granting such other and further relief as the Court finds just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable in this action.

**SPENCER FANE LLP**

*/s/ Melissa Hoag Sherman*
Melissa Hoag Sherman, MO #53524
msherman@spencerfane.com
Douglas M. Weems, MO #41165
dweems@spencerfane.com
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
T 816.474.8100
F 816.474.3216

ATTORNEYS FOR PLAINTIFF

24

## VERIFICATION

State of Missouri    )
                       ) ss.
County of Jackson   )

I, Katherine Council, being duly sworn under oath, state that I am a General Manager of Allied Services, LLC, d/b/a Republic Services of Kansas City, that I have read the forgoing Verified Complaint, and that the statements contained therein are true and accurate to the best of my current knowledge.

_____
Katherine Council

Subscribed and sworn to before me on this 13th day of April 2021.

_____
NOTARY PUBLIC

My Commission Expires:
10/25/2024

HENRY L. POTTS
Notary Public, State of Kansas
My Appointment Expires
10-25-2024

25