**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| ALLIED SERVICES, LLC, | ) | |
| d/b/a Republic Services of Kansas City, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| SMASH MY TRASH, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SUGGESTIONS IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

**Introduction and Relevant Facts**

Defendants, Smash My Trash, LLC, Smash Franchise Partners, LLC, and SMT KC LLC (collectively, "**Smash**") are seeking to provide mobile waste compaction services to business customers of Plaintiff, Allied Services, LLC, d/b/a Republic Services of Kansas City ("**Republic**"), using 25,000-pound Kenworth T270 Trucks with hydraulic booms and three-ton spiked, rotating metal drums ("**Smash Machines**") to smash waste *inside* Republic's dumpsters and open top roll-off waste containers ("**Equipment**") at contracted customer locations.



1

The Equipment is required for Republic's business, and Republic pays to purchase and maintain the containers, covers all costs to install and remove them from customer locations, and assumes all associated risk. Business customers typically enter into Customer Services Agreements ("**Agreements**") with multi-year terms confirming that the Equipment is Republic's property and that business customers are liable for all loss or damage to the Equipment, excluding normal wear and tear. The Agreements require that business customers use the Equipment "only for its proper and intended purposes" and mandate that the Equipment not be overloaded, moved, or altered. Many business customers have Agreements with Republic that provide for scheduled service, such as pick up twice per week.

On its website, Smash falsely advertises and leads consumers to believe that they have the legal "right to Smash [their] trash" using its mobile waste compaction services, notwithstanding the ownership of the containers in which the trash is smashed.

Without notice to or authorization from Republic, Smash has solicited Republic's existing business customers to provide mobile waste compaction services that misuse, trespass upon, and damage Republic's Equipment, which is conspicuously painted blue and displays Republic's trademarked name and crimson and white logo. Smash has put Republic squarely at odds with its business customers.

Customers have contacted Republic to cancel and amend Agreements, and in some instances, they have refused to follow Republic's direction that Smash not use the Equipment for its mobile waste compaction services. Accordingly, Smash's tortious interference has forced Republic to debate and defend its position with customers that Smash does not have the ability to utilize the Equipment for waste compaction services and that the Smash Machines cause damage to Republic's dumpsters and open top roll-off waste containers.

Smash is creating distrust between Republic and its business customers by falsely stating that they have the "right to Smash [their] trash" while also suggesting that they are "trapped by a one-sided contract with [their] waste removal company" and being "ripped off by endless fees and overage charges." *See* https://www.smashmytrash.com/ (last visited April 13, 2021). Hence, Smash is intentionally prompting disputes between Republic and its customers, thereby compelling Republic to dedicate additional time and energy to managing and protecting those relationships.

On its website, Smash states that its "Mission" is to "fundamentally disrupt commercial material management by redefining the business model." *About Us*, https://www.smashmytrash.com/about-us/ (last visited April 13, 2021). Smash is seeking to accomplish that goal here by purposefully disrupting Republic's relationships with its business customers.

Due to Smash's tortious conduct, Republic will suffer confusion by its business customers and a loss of goodwill and reputation that is not quantifiable.

## Argument and Authorities

In determining whether to issue a temporary restraining order, the Court must weigh the following factors: (1) the probability that movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on non-moving parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The "essential inquiry" is not so much whether the movant is likely to succeed on the merits, but "whether the balance of other factors tips decidedly toward the movant and the movant has also raised questions so serious and difficult as to call for more deliberate investigation." *General Mills, Inc. v. Kellogg*

*Co.*, 824 F.2d 622, 625 (8th Cir. 1987) (citing *Dataphase*, 640 F.2d at 113). These factors all weigh heavily in Republic's favor.

> **A. Because There is No Dispute That Republic Owns the Equipment and Has Established Contracts and Relationships with Its Business Customers, It is Likely to Succeed on the Merits.**

Evaluating the likelihood of success on the merits does not require the Court to decide whether Republic will "ultimately win." *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991); *see also O'Connor v. Peru State College*, 728 F.2d 1001, 1002 (8th Cir. 1984) (noting that a "court should avoid deciding with any degree of certainty who will succeed or not succeed" at the preliminary injunction stage). Rather, the Court must determine whether Republic's position is "fairly supported by governing law." *ISG Tech., Inc. v. Secure Data Techs., Inc.*, No. 20-CV-03345-SRB, 2020 WL 7389746, at * 4 (W.D. Mo. Dec. 16, 2020) (citing *Glenwood Bridge, Inc.*, 940 F.2d at 371), and *Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020)). Republic's claims against Smash satisfy this standard.

The Agreements make clear that the Equipment purchased by and provided to Republic's business customers for their contracted waste collection services at all times remains the company's property. Additionally, in the Agreements, Republic's customers expressly agree not to overload the Equipment by weight or volume, nor to alter it in any way. Many customers have contracted for scheduled service, such as pick up twice per week.

Smash has knowledge of Republic's contracts and relationships with its business customers through the presence of the Equipment, which clearly bears Republic's trademarked name and crimson and white logo.

Without justification, and with the specific intent to "disrupt" Republic's contracts and relationships with its business customers, Smash has been actively soliciting Republic's

4

customers to provide mobile waste compaction services. Smash has continued to solicit and provide smashing services to Republic's customers despite Republic's demand that Smash immediately cease and desist.

Smash is intentionally interfering with the Agreements and Republic's business relationships by inducing or causing its customers to breach their contracts by allowing Smash to utilize, overload, and damage the Equipment. *See Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 590 (Mo. App. E.D. 2008) (holding that a claim for tortious interference requires proof of "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of contract or relationship; (4) absence of justification; and (5) damages resulting from [the] defendant's conduct.") (citation omitted).

Further, when Smash compacts solid waste in the Equipment, it is intentionally interfering with Republic's use and depriving Republic of its right to exclusive and quiet possession of its personal property. Because Republic owns and controls the Equipment, even when it is at customer locations, as a matter of Missouri law, the Equipment is always in Republic's possession. Consequently, Smash's unauthorized assumption of control and use of the dumpsters and open top roll-off waste containers for its own business purposes constitutes conversion and intentional "intermeddling with a chattel in the possession of another," giving rise to liability. *See Carter v. White*, 241 S.W.3d 357, 362 (Mo. App. S.D. 2007) (holding that "conversion is any distinct act of dominion wrongfully exerted over one's property, in denial of his right or inconsistent with it" and that it may be proven "(1) by tortious taking, (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by a refusal to give up possession to the

owner on demand") (citations omitted); *Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*, 985 S.W.2d 793, 796-797 (Mo. App. W.D. 1998) (holding that "trespass to chattels involves intentional conduct on the part of one person which interferes with the use of personal property in the possession of another without justification").

Smash even acknowledges on its website that it "uses" dumpsters, bins, containers, and similar receptacles owned by third parties such as Republic as part of providing its mobile compaction services. *See* Terms of Service, https://www.smashmytrash.com/terms-of-service/ (last visited April 13, 2021) ("Under no circumstances will [Smash] or its officers, directors, employees, parents, partners, successors, agents, distribution partners, affiliates, subsidiaries, or their related companies be liable for any damage, repairs, or costs to any trash dumpster, bin, container or similar receptacle (collectively, "Dumpsters") of any kind *owned by You or any third party* and *used with the Services.*") (emphasis added). Indeed, in the past several months, Republic has arrived at customer locations to access the Equipment and perform its contracted and regularly scheduled waste collection services only to find Smash actively using the containers.

Republic's claim for false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), is likewise fairly supported by applicable law. *ISG Tech., Inc.*, 2020 WL 7389746, at * 4; *Sensient Techs. Corp. v. SensoryFlavors, Inc.*, No. 4:08 CV 00336 ERW, 2008 WL 762092, at * 6 (E.D. Mo. Mar. 21, 2008) (granting a temporary restraining order enjoining defendants from "holding themselves . . . out to the public as being authorized by [plaintiff], or as being affiliated with or sponsored by [plaintiff] in any manner, or committing any acts likely to imply such a relationship or affiliation," "passing off their products and services as originating with or sponsored or authorized by [plaintiff]," and from "using or

disseminating any false or misleading statements as to the nature, qualify, or characteristics of [plaintiff's] goods and services"). Consumers do not have the right to utilize Smash's mobile waste compaction services if it involves or requires the unauthorized use of property owned by a third party. However, to win business, Smash falsely represents to consumers on its website that they have the "right to Smash [their] trash." Smashing FAQ's, https://www.smashmytrash.com/smashing-101/ (last visited April 13, 2021). Smash has also misleadingly suggested to Republic's business customers that it partners with waste haulers, implying that Republic has approved or is somehow benefiting from Smash's services.

Republic's business customers, due to Smash's false and misleading statements, are led to believe that they are legally entitled to utilize Republic's containers to have their waste compacted by Smash's mobile compaction service. Therefore, the statements misrepresent the legal nature and ability of Smash to provide mobile waste compaction services and are likely to cause competitive and commercial injury to Republic. *3M Co. v. Nationwide Source Inc.*, No. 20-CV-2694 (WMW/KMM), 2021 WL 141539, at *1 (D. Minn. Jan. 15, 2021) (enjoining defendants from "making statements to the general public . . . that contain false, misleading, and/or deceptive statements" about the plaintiff's products and services in violation of 15 U.S.C. § 1125(a)(1)(B)).

### B. Republic Will Suffer Irreparable Harm if Smash is Not Enjoined From Improperly Soliciting and Providing Services to Republic's Business Customers, Unlawfully Utilizing Republic's Equipment, and Supplying False and Misleading Information to Missouri Consumers.

The harm alleged by Republic due to Smash's tortious conduct has been recognized as being irreparable, supporting injunctive relief.

For instance, the loss of intangible assets such as reputation and goodwill has been held to constitute irreparable injury. *See, e.g.*, *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625

7

(8th Cir.1987); *Rogers Group*, *Inc. v. City of Fayeteville*, 629 F.3d 784,790 (8th Cir. 2010) (finding sufficient evidence of threatened irreparable harm where the challenged city ordinance would cause a loss of goodwill to business and was likely to lead to the permanent loss of customers); *United Healthcare Ins. Co. v. AdvancePCS,* 316 F.3d 737, 741 (8th Cir. 2002) (holding that the loss of "intangible assets such as reputation and goodwill" can result in irreparable harm); *see also Digital Ally, Inc. v. Corum*, No. 17-cv-02026-DDC-GLR, 2017 WL 1545671, at * 3 (D. Kan. April 28, 2017) (citation omitted) (holding that "a plaintiff may establish irreparable harm by such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position"). The loss of business has similarly been found to constitute irreparable harm. *See Am. Nat'l Ins. Co. v. Coe*, 657 F. Supp. 718, 723 (E.D. Mo. 1986) (finding it "obvious" that a plaintiff would suffer irreparable harm from the defendant competing in a "non-compete area" and explaining that although "the plaintiff would have a legal remedy against defendant for damages each time the defendant sold a policy of insurance in violation of the non-compete agreement," such a remedy was impractical and inadequate).

Republic has alleged that, due to Smash's tortious conduct, it will suffer a loss of goodwill and reputation with its customers that is not quantifiable. Republic has further alleged that Smash's tortious conduct has put Republic directly at odds with its business customers solicited by Smash. The tortious interference has forced Republic to debate and defend its position with customers that Smash does not have the ability to utilize the Equipment for waste compaction services and that the Smash Machines cause damage to Republic's dumpsters and open top roll-off waste containers, prompting customers to cancel and amend Agreements and dispute Republic's directives as to its Equipment. Smash is creating distrust between Republic

and its business customers by falsely stating that they have the "right to Smash [their] trash" while also suggesting that they are "trapped by a one-sided contract with [their] waste removal company" and being "ripped off by endless fees and overage charges." *See* https://www.smashmytrash.com/ (last visited April 13, 2021).

Simply put, Smash is encouraging and breeding disputes between Republic and its business customers, causing irreparable harm to Republic. On its website, Smash even admits that its "Mission" is to "fundamentally disrupt commercial material management by redefining the business model." *About Us*, https://www.smashmytrash.com/about-us/ (last visited April 13, 2021). Smash's deliberate and unjustified "disruption" of Republic's contracts and established business relationships, particularly with the unauthorized use of Republic's own dumpsters and open top roll-off waste containers, constitutes irreparable harm.

### C. The Irreparable Harmed Faced by Republic Outweighs Any Threatened Injury to Smash or Other Third Parties.

"The balance of harms analysis examines the harm of granting or denying injunctive relief upon the parties to the dispute and other interested parties, including the public." *H&R Block Tax Servs. LLC v. Thomas*, No. 18-00091-CV-W-ODS, 2018 WL 910170, at * 4 (W.D. Mo. Feb. 15, 2018) (citing *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 372 (8th Cir. 1991)). The Court should "flexibly weigh the case's particular circumstances" to determine whether justice requires it to intervene. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

Here, by prohibiting Smash from unlawfully soliciting and providing mobile compaction services to Republic's business customers, from misappropriating and interfering with Republic's possession and use of the Equipment, and from making false and misleading statements in advertising to consumers, the Court would be mandating only that Smash comply

with the law and respect Republic's property rights. Hence, it would put Smash back in its appropriate position and maintain the status quo. *See 3M Co.*, 2021 WL 141539, at * 2 ("The core question in this analysis 'is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'") (citing *Dataphase*, 640 F.2d at 113). Additionally, the threatened harm to Republic's business relationships and loss of reputation and goodwill substantially outweigh any possible injury to Smash that may come from the Court precluding it from poaching customers from Republic,[1] providing mobile waste compaction services using Republic's Equipment, and falsely counseling consumers that they have the right to utilize Smash's services even when a third party owns the waste container being smashed.

### D. The Irreparable Harmed Faced by Republic Outweighs Any Threatened Injury to Smash or Other Third Parties.

Enforcing valid contracts and preserving contractual relationships serve the public interest. *Walters v. M&I Marshall & Isley Bank*, No. 09-0506-CV-W-ODS, 2009 WL 2069581, * 3 (W.D. Mo. July 14, 2009). The public "similarly has an interest in protecting property rights and avoiding consumer confusion." *Mortg. Rsch. Ctr., LLC v. Lighthouse Credit Sols.*, No. 2:15-CV-4004-NKL, 2015 WL 6434552, at * 3 (W.D. Mo. Oct. 21, 2015) (citations omitted). Likewise, given the provisions of the Lanham Act, the public has an interest in truthful advertising. *See Sanborn Mfg. Co. v. Campbell–Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993) ("The public interest favors enjoining false statements."); *Core Distribution, Inc. v. Doe 1*, No. 16-CV-04059 (SRN/HB), 2018 WL 6178720, at * 7 (D. Minn. Nov. 27, 2018)

---

[1] Smash can continue to solicit and provide services to other customers in the Kansas City metropolitan area.

(holding that "there is no question that the public interest favors enjoining false statements") (citations omitted).

Accordingly, there is a compelling public interest in issuing a temporary restraining order and preliminary injunction to enforce the Agreements, preserve Republic's contractual relationships with its business customers, protect Republic's property rights in the Equipment, and ensure that Smash's advertising to consumers is not false or misleading.

## **Conclusion**

Republic has demonstrated that it is likely to succeed on the merits of its claims, that it will suffer irreparable harm if Smash is not enjoined from unlawfully soliciting and providing mobile waste compaction services to Republic's customers using its own Equipment, that the balance of harms weighs in favor of granting injunctive relief, and that the public has a strong interest in protecting Republic's contracts, business relationships, property rights and preserving truth in advertising. Therefore, the Court should enter a Temporary Restraining Order and a Preliminary Injunction enjoining Smash and its employees, principals, officers, agents, and all others acting for or in concert with them, from:

(1) Improperly soliciting and providing mobile trash compaction services to Republic's existing business customers, thereby tortiously interfering with its contracts and business relationships;

(2) Impairing and impeding Republic's rights as owner to possess and use its Equipment, including, without limitation, utilizing the Equipment for operating Smash's mobile trash compaction business; and

(3) Providing false and misleading information to consumers in the State of Missouri.

Respectfully submitted,

**SPENCER FANE LLP**

*/s/ Melissa Hoag Sherman*
Melissa Hoag Sherman, MO #53524
msherman@spencerfane.com
Douglas M. Weems, MO #41165
dweems@spencerfane.com
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
T 816.474.8100
F 816.474.3216

ATTORNEYS FOR PLAINTIFF