# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ALLIED SERVICES, LLC, <br> d/b/a Republic Services of Kansas City, <br><br> Plaintiff, <br><br> v. <br><br> SMASH MY TRASH, LLC, *et al.*, <br><br> Defendants. | Case No. 21-cv-00249-SRB |

## PLAINTIFF'S REPLY SUGGESTIONS IN FURTHER SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUCNTION

The Court should grant Plaintiff, Allied Services, LLC, d/b/a Republic Services of Kansas City ("**Republic**"), a Temporary Restraining Order ("**TRO**")[1] against Defendants, Smash My Trash, LLC, Smash Franchise Partners, LLC, and SMT KC LLC (collectively, "**Smash**"), to protect Republic's property rights and business relationships.

The four factors set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981), all decidedly weigh in favor of Republic and support entry of a TRO prohibiting Smash from continuing to use Republic's property and interfere with its established relationships with its business customers.

### A. Republic has Demonstrated Irreparable Harm.

#### 1. Republic has Experienced Actual and Continuing Harm.

Republic had demonstrated harm and the ongoing risk of future harm to its open top roll-off waste containers ("**Equipment**"), customer base, goodwill, and position in the marketplace.

---

[1] On April 21, 2021, the Court held a hearing on Republic's Motion for a TRO.

First, Smash's trespass has caused and will continue to cause harm due to its continued interference with and damage to the Equipment. Importantly, Republic is not facing simply a threatened limited or intermittent use of its Equipment by Smash. Instead, Smash's business model and operations are premised on the daily, habitual use of Republic's property, and Smash has indicated its clear intent to continue using the Equipment. Republic should not be forced to suffer Smash's repeated, unapologetic trespass to its property.

A trespasser is liable when the trespass diminishes the condition, quality, or value of personal property. *See eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1071 (N.D. Cal. 2000) (granting a preliminary injunction on a trespass to chattels claim involving an internet server when the alleged trespass had the potential to overload the server). "The quality of personal property may be diminished even though it is not physically damaged by defendants' conduct." *Id.*; *see also Register.com v. Verio, Inc.*, 356 F.3d 393, 404 (2004) (affirming the entry of a preliminary injunction on a trespass to chattels claim where damage to the plaintiff's server was "highly probable," as was the potential that the "system would be overtaxed and would crash"). Here, the actual harm and potential for continued harm to Republic's property warrants injunctive relief.

Second, Republic has presented evidence that it has suffered and will continue to suffer irreparable harm due to Smash's interference with its customer relationships. In *ISG Tech., Inc. v. Secure Data Techs., Inc.*, No. 20-CV-03345-SRB, 2020 WL 7389746, at * 4 (W.D. Mo. Dec. 16, 2020), the Court granted a preliminary injunction based on irreparable harm caused by interference with business and customers relationships. The movant demonstrated the requisite "current and continued risk of actual harm" to business and customer relationships when one employee breached an employment agreement to work for a competitor, had successfully

recruited a former co-worker, attempted to recruit others, and had contacted ISG's clients in an effort to win their business. *Id.* at * 7. The Court found that these facts were sufficient to demonstrate "both an actual and threatened loss of employees, customers, income, and/or future revenue due to solicitation–circumstances that both Kansas and Missouri courts recognize as presenting a sufficient threat of future harm." *Id.* The Court should follow the same analysis in this case.

Smash has actually interfered with Republic's customer relationships and contracts, which is plainly evidenced by Smash's submission of Declarations from Republic's customers. Those Declarations and the testimony at the TRO hearing demonstrate that Smash has induced customers to breach their Customer Service Agreements ("**Agreements**") with Republic, both by engaging Smash and utilizing its services in violation of the "ordinary use" provision in the Agreements and by causing customers to seek amendments to the Agreements. These breaches and others that will undoubtedly follow Smash's ongoing solicitation of Republic's customers will continue to risk the loss of customers and revenue.

Republic has also established actual and continuing harm to its goodwill and position in the marketplace. As the Court heard, Republic has had to explain to upset customers why they cannot engage Smash's services. It has been forced to address Smash's contentions that customers have the right to "smash" their trash and that Republic is simply seeking to protect its bottom line. Such disputes with customers necessarily breed a lack of faith and trust and impair goodwill, which will eventually lead to customers choosing not to renew their Agreements and criticizing Republic on the Internet and to other customers and potential customers.

The Eighth Circuit has squarely held that loss of goodwill can form the basis for a TRO because "it might take months for a loss of goodwill to become manifest." *United Healthcare*

*Ins. Co. v. AdvancePCS*, 316 F.3d 737, 742 (8th Cir. 2002). That is certainly true here, and each additional customer solicited by Smash will only increase the manifest, intentional threat to Republic's goodwill.

### 2. Republic's Harm is not Compensable with Monetary Damages.

Republic's current and continued risk of harm to its personal property, customer base, goodwill, and position in the marketplace cannot be addressed or cured through monetary damages.

Smash's trespass is not a rarity or isolated incident. Rather, it is continuing every day throughout the Court's jurisdiction to Republic's Equipment. This repeated use and harm is not quantifiable. It is impairing fundamental property rights, including Republic's right to control who can and cannot use its Equipment. Use alone, even to intangible property, has been found to constitute irreparable harm and support injunctive relief. *eBay, Inc.*, 100 F. Supp. 2d at 1071 (granting injunctive relief on a trespass to chattels claim involving an internet server); *Register.com*, 356 F.3d 393, 404 (2004) (affirming the entry of a preliminary injunction on a trespass to chattels claim).

Further, there are no reasonable means or methods to quantify the physical damage that will be inflicted upon Republic's Equipment—roughly 1,400 containers located in Kansas City, Missouri and the surrounding areas. Although the increased force and added weight in the open top roll-off waste containers resulting from Smash's services is readily apparent when the services are being performed, Republic does not know which of its customers have engaged Smash. Moreover, it cannot reasonably conduct a thorough inspection of its Equipment on a daily basis, which would be necessary to police any damage caused by regular "smashes."

As the Court heard, the Equipment is designed and constructed only to collect and haul ordinary waste. It is not designed to withstand the impact and force of the Smash Machines,

4

which will limit the lifespan of Republic's Equipment. To protect against this harm, Republic would effectively need to engage a new category of employee to police the ongoing damage to its property. There is no adequate remedy at law to compensate Republic for a potential restructuring of its business practices and a need to re-assess and re-value its Equipment to account for damage caused by Smash. *See Register.com, Inc.*, 356 F.3d at 404 (holding that "injunctive relief is appropriate where it would be difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come") (citation omitted).

Further, Republic's loss of goodwill and impaired reputation is not quantifiable. The Eighth Circuit has explained that "loss of intangible assets such as reputation and goodwill can constitute irreparable injury because it is difficult, if not impossible, to quantify in terms of dollars." *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (citations omitted). Again, Republic has already demonstrated that it is experiencing active conflict with customers caused by Smash and the substantial likelihood for continued conflict due to Smash providing conflicting information to customers about damage to the Equipment, their alleged right to "smash" their trash, and Republic's motives.

Smash's conduct has caused conflict between Republic and its customers, damaging its reputation and potential for new and repeat business. It may never know that any particular customer has terminated due to Smash's interference. This damage to Republic's goodwill and reputation is not measurable and constitutes irreparable harm supporting injunctive relief. *See Kroupa v. Nielsen*, 731 F.3d 813, 820 (8th Cir. 2013) (holding that "damage to one's reputation is a harm that cannot be remedied by a later award of money damages" and that "the threat of reputational harm may form the basis for preliminary injunctive relief").

**B.     Republic has Demonstrated a Likelihood of Success on the Merits of Its Claims.**

In evaluating the likelihood of success on the merits, the Court must only determine whether Republic's position is "fairly supported by governing law." *ISG Tech., Inc. v. Secure Data Techs., Inc.*, No. 20-CV-03345-SRB, 2020 WL 7389746, at * 4 (W.D. Mo. Dec. 16, 2020). Republic's claims satisfy this standard, and the likelihood of success on its trespass claim alone warrants the issuance of a TRO.

**1.     Republic is Likely to Succeed on its Trespass to Chattels Claim.**

A successful claim for trespass to chattels requires demonstrating (1) intentional interference with personal property, (2) without justification, (3) resulting in damages. *See Foremost Ins. Co. v. Pub. Serv. Comm'n of Mo.*, 985 S.W.2d 793, 796–97 (Mo. App. W.D. 1998). Smash argues that it does not "intentionally" interfere with Republic's property. (*See* Defs.' Suggs. Opp., ECF No. 13, at 11.) However, *Foremost* stands the proposition that the act must be intentional and done for "for the purpose of using" the chattel with the knowledge that "intermeddling" will result from the action.[2] *Id.*; *see also McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677, 704 (N.D. Iowa 2007) (holding that pleading use without authorization alleges a "sufficient allegation of 'interference' with property rights in land and 'using' a chattel without authorization to sustain the claim"); Restatement (Second) of Torts § 217 (noting that trespass to chattels requires, as one alternative, "*using* . . . [a] chattel in the possession of another") (emphasis added). As Smash admits, "intermeddling means intentionally bringing about physical contact with the chattel without permission and privilege"

---

[2] *Foremost* describes the first element as "intentional conduct on the part of one person which interferes with the use of personal property in the possession of another without justification." 985 S.W.2d at 797. The case makes clear, however, that "the intention required is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act." *Id.*

(Defs.' Suggs. Opp., ECF No. 13, at 18), which can support entry of a preliminary injunction. For instance, the United States District Court for the Eastern District of New York, applying the Restatement, found that a defendant's act of attaching a barge to the plaintiff's buoy constituted the requisite "meddling" for a trespass to chattel claim for which an injunction was appropriate. *See, e.g.*, *Buchanan Marine Inc. v. McCormack Sand Co.*, 743 F. Supp. 139, 141-142 (E.D.N.Y. 1990). Smash unquestionably uses and intermeddles with Republic's property in providing its services and should be enjoined from continuing to do so.

Republic's customers do not have the authority to permit Smash to use Republic's Equipment. The Agreements expressly state that customers "shall use the equipment only for its proper and intended purpose." (*See* Pl.'s Verified Complaint, ECF No. 2, at ¶ 26.) Compaction inside Republic's open top roll-off containers, as Katherine Council testified, is not a proper or intended purpose of the containers. (*See also id.* ¶ 19 (affirming that "the Equipment is designed and constructed only to collect ordinary waste and be hauled away"). Republic's customers cannot authorize a third party's improper use of Republic's property. Thus, Smash's intentional actions were not "justified" and constitute trespass to chattels.

Further, Republic has demonstrated actual damage and the likelihood of continued damages to its property. As explained in the Restatement, liability "arises if the defendant dispossesses the possessor of the chattel, *impairs its condition, quality, or value*, or deprives the possessor of the chattel's use for a substantial period of time." Restatement (Second) of Torts §§ 217-218, 221-22 (emphasis added). Smash's actions impair the condition, quality, and value of Republic's Equipment. (*See* Pl.'s Verified Complaint, ECF No. 2, at ¶¶ 47-50.)

While Smash insists that its Smash Machines are designed to avoid contact with the Equipment, reality is much different. As this video of a smash taking place in Republic's

7

container demonstrates, the six thousand-pound, spiked steel drum hits the sides of the Equipment as it smashes the contents. *See Smash My Trash*, YouTube, uploaded by TheJessew22, (Mar. 19, 2021), https://www.youtube.com/watch?v=AzpeGETdE_o, at 2:23, 3:34, 3:44, 4:24, 4:43, 6:00, 6:12, 6:21, 6:55, 7:13, 7:23, 7:27, 8:04). Following the TRO hearing, Republic also submitted two videos to the Court showing the physical damage caused by Smash's activities.[3]

Notably, Smash anticipates that it will damage Republic's Equipment. Its Terms and Conditions state that:

> Customer accepts responsibility and liability for the Equipment and its contents, including loss, damage or unauthorized removal of the Equipment from Customer's premises. Customer agrees to defend, indemnify and hold harmless SMT from any claims, demands, liabilities or expenses including, without limitation, claims by third parties, relating to damage to the Equipment.

(Defs.' Suggs. Opp. Ex. F, ECF No. 13-7, at 2.) SMT KC LLC's liability waiver ("**Waiver**") also explicitly contemplates physical damage to the containers, providing that:

> Customer accepts responsibility and liability for the Equipment and its contents, including loss, damage, or unauthorized removal of the Equipment from Customer's premises. Customer agrees to defend, indemnify, and hold harmless SMT from any claims, demands, attorneys' fees, liabilities or expenses.

(*Id.* at Ex. G, ECF No. 13-8, at 1.) At the bottom of the Waiver, while contrary to the above term, a single line reads, "In the unlikely event that SMT KC LLC is at fault for damaging a dumpster, SMT will pay for the repairs/replacement." (*Id.*)

### 2. Republic is Likely to Succeed on its Conversion Claim.

As even Smash admits, conversion may be proven by "any use or appropriation to the use of the person in possession, indicating a claim of rights in opposition to the rights of

---

[3] *Smash My Trash!!!! Dumpster compacting service*, YouTube, uploaded by The Remodelers Life, (Nov. 2, 2020), https://www.bing.com/videos/search?q=smash+my+trash+videos&&view=detail&mid=531C2AA22960F9FA82C1531C2AA22960F9FA82C1&&FORM=VDRVS; *Smash My Trash*, Facebook, uploaded by Smash My Trash), (Oct. 5, 2020), https://m.facebook.com/watch/?v=1456102854580734&_rdr.

8

the owner." *Carter v. White*, 241 S.W.3d 357, 362 (Mo. App. S.D. 2007). Smash attempts to argue that only the customers, not Republic, have the right to immediate possession of containers on their property. However, as Ms. Council testified, Republic has immediate possessory rights to its Equipment. It can and does access the Equipment at any time, for any reason, and it retains the right to remove the property at its sole discretion.

### 3. Republic is Likely to Succeed on its Tortious Interference Claim.

There is no real dispute that Smash is aware of Republic's valid Agreements. Although it objects that Republic did not attach a sample contract to the Complaint, Smash produced one with its Suggestions in Opposition.[4]

Smash argues that it is a party to the Agreements because it is acting an agent for Republic's customers, but this argument is unavailing. Each case cited by Smash involved joint employers and a supervisor's alleged interference with continued employment, leading the courts to conclude that the supervisors did not constitute "third parties" for a tortious interference claim.[5] Here, there can be no argument that Republic is a joint employer or jointly engages Smash and its customers. Smash is not a party to the Agreements, and it is subject to liability for tortious interference.

The Court should likewise reject Smash's argument that it did not induce a breach of contract. The Agreements plainly state that the Equipment can only be used for its "intended purpose," which does not include compaction by Smash. In addition, multiple customers

---

[4] Defendants cite *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629 (S.D.N.Y. 2018), in arguing that Republic's claims fail because it did not tender a copy of any contract. The case involved a motion to dismiss, applying New York law, and is simply not applicable. Furthermore, three separate contracts have now been admitted into evidence.

[5] *See Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 602 (Mo. banc 2013); *Graham v. Hubbs Mach. & Mfg. Co.*, 92 F. Supp. 3d 935, 955 (E.D. Mo. 2015).

have attempted to alter and renegotiate their Agreements after using Smash's services, further evidencing the actual breaches and continued risk of breaches.

Notably, the Waiver anticipates that Smash may induce breaches of contract, noting that Smash may help customers "expunge" their contracts if the "third-party hauler" refuses to allow its property to be used "for purposes of providing the services." (Defs.' Suggs. Opp. Ex. G, ECF No. 13-8, at 1.)

### 4. Republic is Likely to Succeed on its Civil Conspiracy and False Advertising Claims.

Smash misstates applicable law in arguing that franchisors and franchisees cannot conspire for purposes of civil conspiracy claims. Unlike the facts here, *Davidson & Schaff Inc. v. Liberty Nat'l Fire Ins. Co.*, 69 F. 3d 868, 871 (8th Cir. 1995), involved subsidiaries. Similarly, the holding in *Arrington v. Burger King Worldwide*, 448 F. Supp. 3d 1322, 1332 (S.D. Fla. 2020), was limited to its specific facts, as the court held that the relationship at issue more closely resembled "a corporation organized into divisions or de facto branches, or that of a parent subsidiary."

Because Smash falsely represents to consumers on its website that they have the right to "smash" their trash, Republic is also likely to succeed on its false advertising claim.

### C. Balance of Equities and Public Interest.

"[A] defendant who builds a business model based upon a clear violation of the property rights of the plaintiff cannot defeat a preliminary injunction by claiming the business will be harmed if defendant is forced to respect those property rights." *eBay, Inc.*, 100 F. Supp. 2d at 1069. Smash cannot be heard to complain about any harm it may suffer. Moreover, the public interest will not be harmed by granting injunctive relief, which will serve to recognize and protect Republic's property rights and established business relationships.

Respectfully submitted,

**SPENCER FANE LLP**

*/s/ Melissa Hoag Sherman*
Melissa Hoag Sherman, MO #53524
msherman@spencerfane.com
Douglas M. Weems, MO #41165
dweems@spencerfane.com
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
T 816.474.8100
F 816.474.3216

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that the above and forgoing was filed with the Court using its electronic filing system, which will automatically serve a true and accurate copy of the document on all counsel of record.

*/s/ Melissa Hoag Sherman*
Melissa Hoag Sherman