IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ALLIED SERVICES, LLC,<br>d/b/a Republic Services of Kansas City,<br><br>      Plaintiff,<br><br>v.<br><br>SMASH MY TRASH, LLC, et al.,<br><br>      Defendants. | Case No. 21-cv-00249-SRB |

## **ORDER**

Before the Court is Plaintiff Allied Services, LLC's Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. #1.) On April 21, 2021, the Court presided over a hearing on the pending motion. Plaintiff, d/b/a Republic Services of Kansas City, called Kati Council, a Republic Services General Manager, as a witness and introduced several exhibits in support of its motion. Defendants Smash My Trash, LLC, Smash Franchise Partners, LLC, and SMT KC LLC (collectively, "Smash") also introduced exhibits to support their position. Upon consideration of the entire record, Plaintiff's motion is denied.

**I. BACKGROUND**

This suit arises out of a dispute over the right to service industrial waste containers. For purposes of this TRO request,[1] the relevant facts are set forth below. The Court notes, however,

---

[1] A primary difference between a temporary restraining order ("TRO") and a preliminary injunction is that a TRO may be issued without notice to the adverse party. *See* Fed. R. Civ. P. 65(a), (b). In an Order dated April 14, 2021, the Court ordered a Temporary Restraining Order and Preliminary Injunction hearing and directed Plaintiff to serve notice to Defendants. (Doc. #4.) Defendants were subsequently served, received notice, and attended the hearing. "However, although a preliminary injunction cannot be issued without notice, the face that notice is provided does not necessarily mean that the relief granted will be a preliminary injunction rather than a TRO." *Branstad v. Glickman*, 118 F. Supp. 2d 925, 936 (N.D. Iowa 2000). Plaintiff presents the instant motion as one seeking a TRO (Doc. #16, p. 1), and the Court construes the instant motion as such, but notes the outcome remains the same if the motion were construed as one seeking a preliminary injunction.

that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995) (citation omitted).

Plaintiff is a nationwide provider of recycling and waste removal services to residential and business customers, including customers located within the Kansas City metropolitan area. Typically, Plaintiff enters into service agreements with customers to supply open top roll-off waste containers ("Dumpsters"), which are placed on the real property owned or leased by the customer. The Dumpsters remain on the customer's property, collecting waste, until Plaintiff transports the waste to a designated landfill in exchange for a "hauling" or removal fee. Plaintiff retains ownership of the Dumpsters, which are generally exchanged at the time of removal with an equivalently-sized, empty container. Smash provides mobile waste compaction services at contracted customer locations using a hydraulic boom lift equipped with a spiked, rotating metal drum.[2] Waste is compacted by a Smash-truck operator lowering a rotating metal drum into an open-top waste container, compressing and compacting any waste located therein. At issue here is Smash's performance of mobile waste compaction services in Dumpsters owned by Plaintiff.

In its briefing and during the hearing, Plaintiff asserts that its Dumpsters are essential to its waste removal business. Plaintiff purchases and maintains the Dumpsters, covers all costs to install and remove them from customer locations, and states it assumes all associated risk with that process. Plaintiff's business customers typically enter into contracts with multi-year terms confirming that the Dumpsters are Plaintiff's property, and customers assume any liability for all loss or damage that may occur to the Dumpsters, excluding normal wear and tear. The contracts also require that customers use the Dumpster(s) "only for its proper and intended purposes" and

---

[2] Smash denies Plaintiff's contention that the Smash Machines use hydraulic power. "[T]he Smash Machine is not a hydraulic compaction machine. There is no mechanical downforce—literally none." (Doc. #13, p. 11.)

mandate that the Dumpster not be "overloaded, moved, or altered." (Doc. #3, p. 2.) While the needs of individual customers vary, Plaintiff represents that most customers have contracts that provide for scheduled removal service, e.g., pick up twice per week. Plaintiff alleges Smash's use of "25,000-pound Kenworth T270 Trucks with hydraulic booms and three-ton spiked, rotating metal drums" to compact waste inside the Dumpsters is causing damage to Plaintiff's property. (Doc. #3, p. 1.)

On its website, Smash advertises that consumers have the legal "right to Smash [their] trash" using Smash's mobile waste compaction services. (Doc. #3, p. 2.) Plaintiff claims that, without notice or authorization, Smash has solicited Plaintiff's existing customers to provide its waste compaction services, services that Plaintiff asserts misuse, trespass upon, and damage the Dumpsters. Plaintiff also argues Smash's conduct put Plaintiff at odds with its own customers, as Plaintiff must now debate and defend its position that Smash does not have the legal right to utilize the Dumpsters and that its services damage the Dumpsters. In support of this argument, Plaintiff states that some of its customers have contacted Plaintiff to either cancel or amend their contracts, apparently needing removal service less frequently because their trash is compacted by Smash. Plaintiff also claims Smash is sowing distrust by suggesting to customers that they are "trapped by a one-sided contract with [their] waste removal company" and being "ripped off by endless fees and overage charges." (Doc. #3, p. 3.) Plaintiff contends that the disruption of its customer relationships, which negatively impacts its goodwill and reputation, is not quantifiable.

In seeking injunctive relief, Plaintiff claims that Smash's actions and its related business advertising constitute conversion, intermeddling with chattel, tortious interference with business relationships, and false advertising in violation of the Lanham Act, 15 U.S.C § 1125(a)(1)(B). Plaintiff filed this instant lawsuit in federal court pursuant to federal question and supplemental

3

jurisdiction. *See* 28 U.S.C. § 1331, § 1367. Plaintiff seeks from the Court an order enjoining Smash from soliciting Plaintiff's existing customers, compacting any of the waste located in Plaintiff's Dumpsters, and from advertising its services to consumers in the state of Missouri.

## II. LEGAL STANDARD

The Court has authority to issue a TRO under Federal Rule of Civil Procedure 65(b).[3] A TRO, like a preliminary injunction, "is an extraordinary remedy," and the burden of establishing the propriety of such equitable relief is on the movant. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted). In determining the propriety of a TRO, the Court considers four factors:

(1) the threat of irreparable harm to the movant;
(2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;
(3) the probability that the movant will succeed on the merits; and
(4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

Generally, all four factors must be examined "to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (citations and quotation marks omitted). However, "[t]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, for the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987) (citations and quotation marks omitted); *accord Dataphase Sys. Inc.*, 640 F.2d at 114 n. 9

---

[3] "[I]t it well-settled in this circuit that applications for preliminary injunctions and temporary restraining orders are generally measured against the same factors, which were set forth in the seminal decision in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)." *GenoSource, LLC v. Inguran, LLC*, 373 F. Supp. 3d 1212, 1220 (N.D. Iowa 2018) (citation omitted); *see also Little Rock Fam. Plan, Servs. v. Rutledge*, 458 F. Supp. 3d 1065, 1071 (E.D. Ark. 2020) (citation omitted) ("The same [*Dataphase*] standards are applied to motions for temporary restraining orders.").

("the absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction."); *Watkins*, 346 F.3d at 844 ("Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction."); *Mgmt. Registry, Inc. v. A.W. Co.'s, Inc.*, 920 F.3d 1181, 1184 (8th Cir. 2019) (finding the same).

### III. DISCUSSION

In support of its requested TRO, Plaintiff focuses primarily on its claims for tortious interference with its business relationships, conversion, intermeddling with chattel, and false advertising in violation of the Lanham Act. Smash argues that not only does Plaintiff fail to establish its likelihood on success of any of its proffered claims, it also fails to show the threat of irreparable harm, a shortcoming fatal to the instant motion. Given that failure to demonstrate a threat of irreparable harm is alone a sufficient reason to deny Plaintiff's request for a TRO, *see Mgmt. Registry, Inc.*, 920 F.3d at 1184, the Court considers that factor first.

**A. Threat of Irreparable Harm**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (citation omitted). A speculative risk of harm is not sufficient. *See S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction."); *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921 (D. Minn. 2016) (a movant must "demonstrate that a cognizable danger of a future violation exists and is more than a mere possibility"). The alleged risk of irreparable harm must also result

from, or be attributable to, "the action which the [movant] seeks to enjoin." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986) (citation omitted).

Plaintiff, in support of its contention that it imminently faces a risk of irreparable harm, focuses on its business reputation and potential loss of goodwill, claiming it is likely to suffer a loss that is not quantifiable. "Under some circumstances, loss of business threatening the very existence of an enterprise constitutes irreparable injury sufficient to justify the issuance of a preliminary injunction." *Assoc. Producers Co. v. City of Indep.*, 648 F. Supp. 1255, 1258 (W.D. Mo. 1986), *amended by* 665 F. Supp. 755 (W.D. Mo. 1987). Additionally, "[b]ecause it is difficult to quantify, the loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *3M Co. v. Nationwide Source Inc.*, No. 20-CV-2694, 2021 WL 141539, at *5 (D. Minn. Jan. 15, 2021) (citations omitted). However, "economic loss does not, in and of itself, constitute irreparable harm, and revenues and customers lost to competition which can be regained through competition are not irreparable." *Iowa Utilities Bd.*, 109 F.3d at 426 (cleaned up). The essential question is whether the threatened economic loss is "unrecoverable," which "does qualify as irreparable harm." *Id.*

Regarding the risk posed to its goodwill and reputation with customers, Plaintiff explains that it has been forced to "debate and defend its position with customers that Smash does not have the ability to utilize the [Dumpsters] for waste compaction services."[4] (Doc. #3, p. 8.) Plaintiff also alleges some of its customers have opposed or resisted Plaintiff's directive that

---

[4] Plaintiff also alleges that "the Smash Machines cause damage" to the Dumpsters. (Doc. #3, p. 8.) Plaintiff's complaint states that its waste containers cost approximately $5,000.00 each (Doc. #2, p. 5), and alleges how the Smash Machines damage the Dumpsters. (Doc. #2, ¶¶ 47-49.) To the extent that Plaintiff argues the alleged damage to its Dumpsters constitutes irreparable harm, the Court disagrees. Based on testimony during the TRO hearing and the evidentiary record, the Court finds that any physical damage to Plaintiff's tangible personal property can be adequately compensated through an award of damages. *See Rogers Grp., Inc.*, 629 F.3d at 789. Therefore, the Court only considers Plaintiff's argument that it faces irreparable harm from "a loss of goodwill and reputation with its customers." (Doc. #3, p. 8.)

Smash may not utilize its Dumpsters for waste compaction services, with some customers either cancelling or amending their service contracts. Smash contends that Plaintiff's allegations of irreparable harm are speculative, vague, and unsupported by its proffered evidence. Smash also characterizes Plaintiff's alleged injury as "self-inflicted," meaning it is not attributable to the action Plaintiff seeks to enjoin. (Doc. #13, p. 28.)

The Court finds Plaintiff has not presented enough evidence, either in its briefing or on the record, to establish that the risk of harm is so "certain and great and of such imminence" as to require preliminary injunctive relief. *See Novus Franchising, Inc.*, 725 F.3d at 895. Nor is there evidence that Plaintiff's stated risk of future harm is truly irreparable. Although Plaintiff claims Smash's actions have prompted some customers to cancel or amend their contracts with Plaintiff, Plaintiff fails to demonstrate that this loss of business threatens its existence or is unrecoverable. The Court believes Plaintiff's alleged harms are, in essence, a claim for lost profits, an injury that is quantifiable as well as compensable via an award of monetary damages. *See, e.g.*, *id.* ("[W]e question whether [the movant's] alleged injuries, i.e., 'a loss of customers or customer goodwill,' . . . are truly 'irreparable' in the sense that they could not be addressed through money damages if [movant] is successful following a trial on the merits.") (internal citations omitted); *see also Harry Brown's, L.L.C.*, 563 F.3d at 319 (affirming district court's determination that harm from "lost customer relationships was equivalent to a claim of lost profits" and "could therefore be compensated" as money damages). "When there is an adequate remedy at law, a preliminary injunction is not appropriate." *Watkins*, 346 F.3d at 844.

Regarding Plaintiff's stated concerns about its potential loss of goodwill and reputation, the Court finds these allegations are speculative in nature and, without more, are insufficient to justify a grant of injunctive relief. Plaintiff argues Smash is "creating distrust" between Plaintiff

and its customers and "encouraging and breeding disputes" by making disruptive statements on Smash's website. (Doc. #3, pp. 8-9; Doc. #16, p. 3.) However, Plaintiff has "offered no particularized evidence that customers are completely abandoning it," and identifies only eight customers who have been allegedly solicited by Smash. *Dynamic Fastener Serv. Inc. v. Metal Roof Innovations, Ltd.*, No. 15-CV-00403-BCW, 2015 WL 12747903, at *2 (W.D. Mo. Oct. 8, 2015). Plaintiff alleges that an unspecified number of customer contracts have been cancelled or amended, but even if those allegations were supported by more evidence, Plaintiff still fails to demonstrate how that alleged loss of business is unrecoverable or unquantifiable. *See Mgmt. Registry, Inc.*, 920 F.3d at 1183 (affirming a district court's finding of no risk of irreparable harm where the movant "had a potentially viable theory—it was continuing to lose goodwill with its employees and customers—but not enough evidence or analysis to support it."). Nor does the Court believe that Plaintiff's speculative need to "potentially restructure its business practices" and "reassess" its equipment costs in light of Smash's business model to be an irreparable harm warranting equitable relief. (Doc. #16, p. 5.)

Plaintiff, in arguing that it has shown irreparable harm, draws comparisons between the instant case and *ISG Tech., Inc. v. Secure Data Techs., Inc.*, No. 20-CV-03345-SRB, 2020 WL 7389746, at * 4 (W.D. Mo. Dec. 16, 2020) (Bough, J.), and urges the Court to similarly rule in Plaintiff's favor here. However, that case is distinguishable from the instant facts. *Secure Data* involved the alleged breach of an employee noncompete agreement and included, among other things, allegations of parties conspiring to use stolen proprietary client data to secure exclusive vendor contracts, supported by a robust evidentiary record. Plaintiff's stated harms in this case are far more speculative. Even if Plaintiff's identified harms were supported by more evidence, the nature of the alleged injuries indicate that adequate legal remedies exist to redress Plaintiff.

Ultimately, Plaintiff's allegation of a loss of goodwill and reputation is too speculative to justify its requested injunctive relief. This shortcoming, combined with the fact that Plaintiff's stated harms are simply not irreparable, is fatal to Plaintiff's motion.

### B. Remaining *Dataphase* Factors

Plaintiff has not met its heavy burden of demonstrating the threat of irreparable harm with respect to its alleged loss of goodwill, reputation, or customers. "Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted." *Gelco Corp.*, 811 F.2d at 420 (citations omitted). The Court therefore declines to address the remaining *Dataphase* factors.

### IV. CONCLUSION

Accordingly, it is hereby O**RDERED** that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. #1) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
DATE: April 28, 2021              UNITED STATES DISTRICT JUDGE