IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ALLIED SERVICES, LLC, <br> d/b/a Republic Services of Kansas City, <br><br> Plaintiff, <br><br> v. <br><br> SMASH MY TRASH, LLC, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 21-cv-00249-SRB <br> ) <br> ) <br> ) <br> ) |

## ORDER

Before the Court is the Motion of Defendants Smash Franchise Partners, LLC, and SMT KC LLC, for Dismissal of Counts II, III, IV, and V of Plaintiff's Complaint, and Motion of Defendant Smash My Trash, LLC, for Dismissal for Lack of Personal Jurisdiction. (Doc. #20.) Also before the Court is Plaintiff's Motion to Amend With Suggestions in Support. (Doc. #33.) As set forth below, Defendants' Motion to Dismiss (Doc. #20) is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion to Amend (Doc. #33) is DENIED.

**I. FACTUAL BACKGROUND**

Because this matter comes before the Court on a motion to dismiss, the following allegations in Plaintiff Allied Services, LLC, d/b/a Republic Services of Kansas City's ("Republic") Complaint (Doc. #2) are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additional allegations and facts relevant to the pending motions are discussed in Section III.

Republic provides waste and recycling services to business and residential customers in the Kansas City metropolitan area. Republic owns dumpsters and open top roll-off waste containers (the "Equipment") and supplies the Equipment to its customers. The Equipment is

designed and constructed only to collect a customer's ordinary waste. Republic and its business customers typically enter into a Customer Services Agreement (the "Agreement").[1] The Agreement provides that Republic will haul away the customer's waste at a scheduled time. The Agreement provides in part that the Equipment is Republic's property and that the customer is liable for any loss or damage to the Equipment.

Defendant Smash Franchise Partners, LLC ("Smash Franchise"), Smash My Trash LLC ("SMT"), and SMT KC LLC ("SMT KC") (collectively, "Smash") provide mobile waste compacting services in the Kansas City metropolitan area. Smash compacts trash for its customers by using "Smash Machines." (Doc. #2, ¶ 32.) Smash Machines are 25,000 pound trucks with hydraulic booms and three-ton spiked, rotating metal drums.

On April 13, 2021, Republic filed this lawsuit against Smash.[2] Republic alleges that Smash has wrongfully solicited its customers, and that Smash's compaction services wrongfully utilize, trespass upon, and damage Republic's Equipment. The Verified Complaint asserts the following claims: Count I—Trespass to Chattels; Count II—Conversion; Count III—Tortious Interference; Count IV—False Advertising; Count V—Civil Conspiracy; and Count VI—Declaratory Judgment.

Smash now moves to dismiss Counts II, III, IV, and V for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). SMT also moves to dismiss all claims against it for lack of personal jurisdiction under Federal Rule of Civil

---

[1] Smash submitted a copy of a Customer Service Agreement in support of its Motion to Dismiss. (Doc. #22-2.) Republic's opposition brief does not dispute the authenticity of that exhibit and does not dispute that it may be considered by the Court. As a result, the Court has considered the exhibit in resolving the Motion to Dismiss. *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 863 (8th Cir. 2010) (recognizing that a court may consider documents referenced in the complaint).

[2] On the same day, Republic filed a motion for temporary restraining order and preliminary injunction. The Court denied that motion on April 28, 2021. (Doc. #17.)

Procedure 12(b)(2). Republic opposes the motion, and also filed a Motion to Amend its Complaint "if the pending Motion to Dismiss is not denied in its entirety[.]" (Doc. #33, p. 3.)[3] Smash opposes Republic's Motion to Amend, and both motions are addressed below.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). When deciding a motion to dismiss, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotations omitted).

Under Rule 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To survive a motion to dismiss challenging personal jurisdiction, the plaintiff must plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). If, as here, the parties submit affidavits and other materials outside the pleadings, "and the district court relies on the evidence, the motion is in substance one for summary judgment." *Id.* The plaintiff "bears the burden of proof on the issue of

---

[3] All page numbers refer to the pagination automatically generated by CM/ECF.

personal jurisdiction and must establish jurisdiction by a preponderance of the evidence[.]" *Id.* The evidence must be viewed "in the light most favorable to the plaintiff" and "all factual conflicts" must be viewed in favor of the plaintiff. *K-V Pharm. Co. v. J. Uriach & CIA, SA*, 648 F.3d 588, 592 (8th Cir. 2011).

### III. DISCUSSION

#### A. Rule 12(b)(6)—Failure to State a Claim

##### i. Conversion (Count II)

Count II asserts a claim for conversion. "In Missouri, in order to maintain a suit for conversion . . . the plaintiff must have had or been entitled to immediate possession at the time of conversion and when the suit is brought." *Mickelson v. Airmen, Inc.*, 712 S.W.2d 714, 717 (Mo. App. W.D. 1986) (emphasis in original) (alterations omitted).[4] "The law of conversion is concerned with possession, and not with title." *Jackson v. Premier Serv. Corp.*, 761 S.W.2d 648, 650 (Mo. App. E.D. 1988). "Since conversion is a possessory action, ownership alone is not enough to support a conversion action." *Id.*

Smash argues this claim should be dismissed because the Agreement between Republic and its customers provide that the customers—not Republic—have the right to immediate possession of the Equipment. In particular, Smash contends that "Republic's customer contract specifies that the contract remains in effect for 36 months and automatically renews for successive 36-month terms unless a party terminates the contract by giving 60 days' notice. Hence, it is the customer, not Republic, that has possessory interest of the containers." (Doc. #21, pp. 9-10; Doc. #47, pp. 4-6.) Republic argues it has sufficiently alleged all elements of a conversion claim, including its right to immediate possession.

---

[4] Other than Count IV, the parties agree that Missouri substantive law applies to the claims at issue in the Rule 12(b)(6) motion.

4

Upon review, the Court finds that the Complaint fails to state a claim for conversion. As stated above, ownership alone is insufficient to satisfy the possession element. *Mickelson*, 712 S.W.2d at 717. Here, Republic fails to plausibly allege that it was entitled to immediate possession of the Equipment at the time of the alleged conversion and when this suit was filed. (Doc. #2, ¶ 86.) Although Republic alleges that it "owns and at all times has been entitled to possess the Equipment," the Agreement provides that "Customer shall provide safe, unobstructed access to the equipment on the scheduled collection day." (Doc. #2, ¶¶ 26, 86.) While the facts asserted in a complaint are "assumed true and construed in favor of the plaintiff," the context of this case shows that Republic is only entitled to immediate possession of the equipment on specific, scheduled collection days. *Iqbal*, 556 U.S. at 663–64 ("[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). The Complaint does not plausibly allege that Republic had the right to immediate possession "at both (a) the time of the conversion; and (b) the filing of th[is] lawsuit." (Doc. #47, p. 6.)

For these reasons, and the additional reasons stated by Smash, Count II fails to state a claim for conversion. As a result, Count II is dismissed.

### ii. Tortious Interference (Count III) and Civil Conspiracy (Count V)

Count III asserts a claim for tortious interference. The elements of a claim for tortious interference with a contract or business expectancy are: "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Robb v. Bond Purchase, LLC*, 580 S.W.3d 70, 84-85 (Mo. App. W.D. 2019).

5

Smash argues this claim should be dismissed because Republic has failed to adequately plead the third element. According to Smash, the Complaint alleges that Republic customers "breach their service agreements" with Republic by allowing Smash to smash their trash. (Doc. #21, p. 10.) Smash argues that when, "as here, the defendant *is an agent acting for the contracting party* that allegedly breached its contract, the agent and the contracting party are one and the same for purposes of tortious interference, and a party cannot be sued for interfering with its own contract." (Doc. #21, pp. 10-11) (citing cases). In response, Republic argues that Smash's argument is premature at this early stage of litigation and that the Complaint adequately states a claim for tortious inference.

Upon review, the Court rejects Smash's arguments. Under Missouri law, "[w]hether an agency relationship exists is generally a factual question for the jury." *West v. Sharp Bonding Agency, Inc.*, 327 S.W.3d 7, 11 (Mo. App. W.D. 2010). In general, an agency relationship may be created if "(1) the agent holds the power to alter legal relations between the principal and third parties; (2) the agent is a fiduciary with respect to matters within the scope of agency; and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent." *Id.* at 12.

Here, the Complaint does not allege an agency relationship between Smash and Republic's customers. Moreover, the Complaint does not allege that Smash has the power to alter legal relations between Republic's customers and third parties, or that Smash serves in a fiduciary capacity. Instead, the Complaint alleges that Smash is an outside third party and interferes with Republic's contracts with its customers. At most, Smash's agency argument raises a factual dispute which cannot be resolved at the motion to dismiss stage. Therefore, the Court denies Smash's motion to dismiss Count III for tortious interference.

6

Case 4:21-cv-00249-SRB   Document 48   Filed 08/02/21   Page 6 of 15

Count V asserts a claim for civil conspiracy. Smash argues that the civil conspiracy claim is based solely on the tortious interference claim and must be dismissed "for the same reasons." (Doc. #21, p. 11); *see Hibbs v. Berger*, 430 S.W.3d 296, 320 (Mo. App. E.D. 2014) ("If the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well.") (citations and quotation marks omitted). Because the Complaint adequately states a claim for tortious interference, the Court denies Smash's motion to dismiss the civil conspiracy claim.

### iii. False Advertising Under the Lanham Act (Count IV)

Count IV of the Complaint asserts a claim against Smash for false statements and advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). The alleged false statements in this case were posted on Smash's website under "Smashing FAQs." These statements are:

> Will my waste company let me Smash my trash? It's not their waste, it's yours. Well established legal doctrines protect your rights to manage your waste while under your control at your facility. This includes the right to Smash your trash.

(Doc. #1, ¶ 102.)

The elements of a false advertising claim under the Lanham Act are: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products."

7

*Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 (8th Cir. 2011) (citations and quotation marks omitted).

Smash argues the Smashing FAQs cannot form the basis of a Lanham Act violation because: (1) they are statements of opinion instead of fact, and are not false (element one), (2) Republic fails to adequately plead that the Smashing FAQs affected any purchasing decision (element three), and (3) Republic fails to adequately plead an injury caused by the Smashing FAQs (element five). Republic argues that each element is adequately pled, and the parties' arguments are addressed below.

### 1. First Element—False Statement of Fact.

#### a. Whether the Statements are Factual.

Smash contends that the challenged statements are opinions regarding the state of the law, not a statement of fact. In particular, Smash "expresses its opinion or belief about what the law provides, specifically that a property owner owns waste while it is on the owner's property and the law allows parties to manage their waste while it is in their possession. Such opinions are not actionable." (Doc. #21, p. 12; Doc. #47, pp. 7-8.) Republic responds that the statements "advise consumers that they have the legal right to utilize Smash's services, notwithstanding that they do not own the open top roll-off waste containers being 'smashed.' This is not merely Smash's opinion, but is a legal conclusion." (Doc. #34, p. 24.)

Upon review, the Court finds the Complaint adequately alleges that the challenged statements are legal conclusions are not merely opinions. The Smash website states that "well established legal doctrines protect your rights to manage your trash . . . this includes the right to Smash your trash." (Doc. #2, ¶ 102.) However, the Complaint alleges that "[u]nder Missouri

8

law, consumers do not have the right to utilize Smash's mobile waste compaction services if it involves or requires the unauthorized use of property owned by a third party." (Doc. #2, ¶ 101.)

These allegations are sufficient to withstand a motion to dismiss. As explained by one court, "[s]tatements about the status of a case or one's . . . property rights are not necessarily subjective opinions and are generally verifiable . . . [t]hat a court of law need ultimately determine the truth or falsity of these statements does not render them 'opinion' statements." *ACT, Inc. v. Worldwide Interactive Network*, No. 3:18-cv-186, 2020 WL 4195269, at *6 (E.D. Tenn. July 21, 2020).[5] Smash's arguments to the contrary are rejected.

### b. Whether the Statements are False.

Smash argues that even if the challenged statements are factual, Republic has not adequately pled they are false. "Under the Lanham Act, a plaintiff can prove that advertising is false by showing . . . that it contains a statement that is 'literally false[.]'" *Buetow*, 650 F.3d at 1185. "Only an unambiguous message can be literally false." *Id.* If the statement "can reasonably be understood as conveying different messages, a literal falsity argument must fail." *Id.* (cleaned up). Literal falsity may also be shown by "necessary implication." *Id.* A message is necessarily implied from the product's name and advertising if "the false message will necessarily and unavoidably be received by the consumer." *Id.* (citation and quotation marks omitted). Whether a statement "is literally false is typically an issue of fact." *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 929 (E.D. Mo. 2010) (citations omitted).

The Court finds that Republic has adequately alleged literal falsity. Specifically, the Complaint alleges that Smash's website falsely states that "well established legal doctrines

---

[5] Neither party cites a controlling Eighth Circuit opinion on this particular issue.

9

protect your rights to . . . Smash your trash." (Doc. #2, ¶¶ 35-36, 69.)  As discussed above, the Complaint alleges that Missouri law does not recognize this purported "right."  (Doc. #2, ¶ 101.)  Further, the alleged right identified by Smash is unambiguous.  The Smashing FAQs do not state that the alleged right is contingent, subject to local or state laws, or otherwise limited.  Under these circumstances, Republic has adequately alleged that the "right to Smash your trash" statement is literally false on its face.  However, Smash may reassert its arguments at the summary judgment stage.

Even if this statement was not false on its face, Republic has adequately alleged literal falsity by necessary implication.  The Complaint alleges in part that "Republic's business customers, due to Smash's false and misleading statements posted on its website . . . are led to believe that they are legally entitled to utilize Republic's containers to have their waste compacted by Smash's mobile compaction service."  (Doc. #2, ¶ 109.)  For these reasons, the Court finds the Complaint adequately alleges a false statement.

### 2. Third Element—Whether the Statement Was Material.

The third element requires a plaintiff to allege that the challenged statement was material, meaning that it was likely to influence a purchasing decision.  *Buetow*, 650 F.3d at 1182-83.  A "bare allegation that the statement satisfies the legal standard for materiality is insufficient." *Window World Int'l, LLC v. O'Toole*, No. 4:19-cv-2363-SEP, 2020 WL 7041814, at *4 (E.D. Mo. Nov. 30, 2020).  A plaintiff must allege facts sufficient "to support an inference that the statements . . . were material to a purchasing decision."  *Id.*

Smash argues that Republic failed to adequately plead facts that support the materiality element.  Smash contends the Complaint "alleges only that unidentified statements made by

10

Case 4:21-cv-00249-SRB   Document 48   Filed 08/02/21   Page 10 of 15

SMT 'are likely to deceive Republic's business customers in a material way.'" (Doc. #21, p. 18.) Republic argues the Complaint contains sufficient allegations regarding materiality.

Upon review, the Court agrees with Republic. The Complaint alleges that "Smash has falsely led Republic's business customers to believe that the company is both aware of and has no objection to Smash's misuse of the Equipment and also that Republic's customers nevertheless have the unfettered 'right to Smash their trash.'" (Doc. #2, ¶ 104.) The Complaint further alleges that "Republic's business customers have contacted it to cancel and amend Agreements, and in some instances, they have refused to follow Republic's direction that the Equipment may not be used by Smash for its mobile waste compaction services." (Doc. #2, ¶ 58.) The allegations in the Complaint, along with all reasonable inferences therefrom, show that Republic has adequately pled materiality.

### 3. Fifth Element—Causation

The fifth and final element requires that "the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Buetow*, 650 F.3d at 1182. Defendants argue the Complaint fails to adequately plead that any of Republic's "customers actually viewed an SMT Web page and were caused to believe anything." (Doc. #21, p. 18.)

Upon review, the Court finds that the allegations in the Complaint—and reasonable inferences that can be drawn from those allegations—adequately plead causation. As explained by Republic, "the Complaint alleges that Smash's actions, including its false statements, have caused Republic's customers to breach their Agreements, have resulted in the denial of access to its Equipment, have interrupted regularly scheduled hauls, have led to damage to its containers, and have harmed its reputation with its customers." (Doc. #34, p. 29) (citing Doc. #2, ¶¶ 47-50,

11

66, 81, 94-95).) These allegations adequately allege that Smash's alleged false statements caused Republic economic injuries and/or a loss of goodwill with respect to its customers. For these reasons, the Court denies Smash's motion to dismiss Count IV.

### B. Rule 12(b)(2)—Personal Jurisdiction

SMT alternatively moves to dismiss all claims against it for lack of personal jurisdiction. SMT argues that "Republic has not alleged, and cannot allege, any forum-specific contacts by [SMT], that are related to Republic's alleged injuries." (Doc. #21, p. 20.) SMT relies, in part, on a declaration from SMT's President, Justin Haskin. According to Mr. Haskin, SMT never operated in Missouri, operated solely in Texas, and terminated its active operations in 2020. Under these circumstances, SMT argues the Court lacks personal jurisdiction over it under Missouri's long arm statute and the Due Process clause.

In response, Republic argues that:

> SMT's arguments overlook that SMT owns and operates Smash's website. The Terms of Service specifically state, "The Website and Applications, plus SMT's waste-management solution described herein, together constitute our 'Services.' Our services include www.smashmytrash.com and all other physical and other electronic resources on which we place these Terms of Service."

(Doc. #34, p. 29.) Republic contends the Court has personal jurisdiction over SMT because it owns and operates that website, because SMT has a Facebook Page and Twitter account, and because SMT uses these electronic mediums to purposely direct and solicit business in Missouri. Republic further argues it has been injured in Missouri as a result of SMT's false advertising. Republic contends that SMT's contacts with Missouri support specific personal jurisdiction under the "Zippo test" which the Eighth Circuit has found "instructive." *See Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). As explained below, the Court agrees with Republic.

12

In *Zippo*, "the court examined the issue of whether a website could provide sufficient contacts for specific personal jurisdiction." *Johnson*, 614 F.3d at 796 (citing *Zippo*, 952 F. Supp. at 1124). "The court created a 'sliding scale' to measure the likelihood of personal jurisdiction." *Johnson*, 624 F.3d at 796. "The scale runs from active contract formation and repeated transmission of computer files to mere posting of information on a website." *Id.* "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer." *Zippo*, 952 F. Supp. at 1124. "In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

In this case, SMT's website appears to fall within *Zippo's* "middle ground" because "a user can exchange information with the host computer." *Zippo*, 952 F. Supp. at 1124. As explained by Republic:

> At the top of each page, the website includes a function where consumers in the State of Missouri can actively 'Schedule a Free Demo,' which the Court should reasonably infer will be received and addressed by SMT as the host. Through its website, SMT further advertises that Smash's services are available in Missouri and provides links to specific information concerning its coverage of the Kansas City and St. Louis metropolitan markets. The website also solicits general inquiries, and represents to consumers in the State of Missouri that they have the 'right to Smash [their] trash.'

(Doc. #34, p. 30) (citations and quotation marks omitted).

The Court finds that SMT's website is interactive because consumers can schedule a free demonstration, and may also submit general inquiries. In addition, this exchange of information is exclusively commercial in nature and/or intended to result in a commercial transaction. Further, SMT's Facebook and Twitter accounts appear to solicit business, including in Missouri. Under *Zippo*, these facts support the exercise of specific personal jurisdiction over SMT. Moreover, Republic has also alleged that it suffered injury in Missouri as a result of SMT's false

13

advertising.  Taken together, Republic has carried its burden of showing that SMT is subject to specific personal jurisdiction in this Court.

SMT's arguments to the contrary are rejected.  For example, SMT's reply brief relies on an affidavit from Charles C. Sullivan.  Mr. Sullivan states that he "*ha[s] been told* that Smash My Trash, LLC terminated its active operations in May 2020 after selling certain rights to franchisees of Smash Franchise Partners, LLC."  (Doc. #47-1, p. 1) (emphasis supplied).  Mr. Sullivan further states he has been "advised that Smash My Trash, LLC is identified in the 2018 Terms of Service," but that "it is not true after 2019" and "the entire website is scheduled for an . . . overhaul beginning in August 2021."  (Doc. #47-1, p. 1.)

Upon review, the Court finds that the accuracy and veracity of Mr. Sullivan's statements should be explored through discovery.  At this stage of the proceedings, and for the reasons discussed above, Mr. Sullivan's statements are insufficient to show that the Court lacks personal jurisdiction over SMT.

**C. Republic's Motion to Amend**

Finally, Republic has filed a motion to amend its Complaint "if the pending Motion to Dismiss is not denied in its entirety[.]"  (Doc. #33, p. 3.)  This motion warrants little discussion.  As Smash correctly argues, this "motion is procedurally improper for the basic reason that Republic failed to submit a proposed amended complaint."  (Doc. #47, p. 2); *United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 742 (8th Cir. 2014) (recognizing that when a plaintiff seeks "leave to amend if the court grant[s] defendants' motion to dismiss . . . to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion").  Even

14

if Republic had properly sought leave to amend, the Court finds that any attempt to amend the conversion claim would be futile.[6] At this time, Republic's motion to amend is denied.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that:

1. the Motion of Defendants Smash Franchise Partners, LLC, and SMT KC LLC, for Dismissal of Counts II, III, IV, and V of Plaintiff's Complaint, and Motion of Defendant Smash My Trash, LLC, for Dismissal for Lack of Personal Jurisdiction (Doc. #20) is GRANTED IN PART and DENIED IN PART. The Motion to Dismiss is GRANTED insofar as Count II for conversion is dismissed for failure to state a claim. The Motion to Dismiss is DENIED in all other respects; and

2. Plaintiff's Motion to Amend (Doc. #33) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: August 2, 2021

---

[6] Smash did not file a separate brief opposing the motion to amend. Instead, Smash's reply brief in support of its motion to dismiss argued the motion to amend should be denied. Although Republic could arguably file a reply brief in support of its motion to amend, a reply brief would not alter the Court's decision for the reasons stated herein.