# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ALLIED SERVICES, LLC,<br>d/b/a Republic Services of Kansas City,<br><br>Plaintiff,<br><br>v.<br><br>SMASH MY TRASH, LLC, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 21-cv-00249-SRB<br>)<br>)<br>)<br>) |

## ORDER

Before the Court is Plaintiff Allied Services, LLC's ("Plaintiff") Motion for Partial Summary Judgment. (Doc. #80.) As set forth below, the motion is DENIED.

**I. FACTUAL BACKGROUND**

The facts of this case have been discussed in prior orders and will not be repeated herein. Only those facts necessary to resolve the pending motion are discussed below, and those facts are simplified to the extent possible.[1] Additional facts relevant to the parties' arguments are set forth in Section III.

Plaintiff provides waste and recycling services to business customers in the Kansas City metropolitan area. Plaintiff owns open top roll off dumpsters (the "Equipment") in order to provide those services. Plaintiff delivers the Equipment to its customers, which the customers then use to deposit and collect waste. At scheduled times, Plaintiff returns to the customer's premises and hauls away the waste.

---

[1] The Court notes that the applicable standard requires the facts to be viewed in the light most favorable to the non-moving party. Plaintiff's reply brief asks the Court to strike or disregard Defendants' responses to Plaintiff's Statement of Facts, and to strike all 96 statements of additional facts submitted by Defendants. That request is summarily denied as unwarranted and because the record shows disputed issues of material fact. This Order discusses some of the facts and issues that preclude summary judgment, but need not address all of the facts or all of the parties' arguments.

The terms of this arrangement are set forth in a Customer Services Agreement ("Plaintiff's Agreement").  Under Plaintiff's Agreement, the customer gives Plaintiff "the exclusive right to collect, transport, and dispose of or recycle all of Customer's non-hazardous waste materials," and Plaintiff "agrees to furnish such services[.]"  (Doc. #86-14, p. 1.)[2]  The customer agrees to use the Equipment "only for its proper and intended purpose."  (Doc. #86-14, p. 2.)  Finally, Plaintiff agrees to "acquire title to Waste Materials when they are loaded into [Plaintiff's] truck."  (Doc. #86-14, p. 1.)

Defendant Smash Franchise Partners, LLC ("Smash Franchise Partners") is the franchisor of the "Smash My Trash" business model and brand.  Smash My Trash franchisees provide mobile waste compaction services to customers using a "Smash Machine."  A Smash Machine is mounted on a mobile "Smash Truck" and has rotating metal compaction drums with "protruding teeth designed to grip waste materials."  (Doc. #86, p. 13.)  A Smash Machine compresses waste—also known as "smashing"—that has been deposited in large, open top waste containers such as Plaintiff's Equipment.  "Smashing the trash enables the customer to pack more trash into each dumpster load and save on fees paid to the waste management company that provides the dumpster and hauls away the waste."  (Doc. #86, p. 14.)  Defendant SMT KC LLC ("Smash KC") operates a Smash My Trash franchise and provides mobile waste compaction services throughout the Kansas City metropolitan area.

Smash Franchise Partners operates a Smash My Trash website (the "Smash Website").  The Smash Website contains an FAQ page to assist potential customers.  One FAQ discusses whether a customer of a waste hauling company—such as Plaintiff's customers—may also use Defendants' services.  The FAQ states: "[Q.]  Will my waste company let me Smash my trash?

---

[2] All page numbers refer to the pagination automatically generated by CM/ECF.

[A.] It's not their waste, it's yours. Well established legal doctrines protect your rights to manage your waste while under your control at your facility. This includes the right to smash your trash." (Doc. #86, p. 12.)

Smash KC and other franchisees enter into a Customer Services Agreement (the "Smash Agreement") with their customers. In relevant part, Smash KC agrees to "supply . . . solid waste volume-reduction" services in exchange for payment. (Doc. #86-9, p. 2.) The "Customer represents and warrants that it owns the Waste Materials and that Customer has the care, custody and control of all dumpster equipment including, without limitation, 'bins' or 'boxes' ('Equipment') used to contain the Waste Materials intended for the Services provided by" Smash KC. (Doc. #86-9, p. 2.) The customer also "accepts responsibility and liability for the Equipment and its contents[.]" (Doc. #86-9, p. 2.)

On April 13, 2021, Plaintiff filed this lawsuit against Defendants Smash Franchise Partners, Smash KC, and Smash My Trash, LLC ("Defendants").[3] The First Amended Complaint alleges that Defendants have wrongfully "solicited [Plaintiff's] customers to provide waste compaction services that utilize, trespass upon, and damage [Plaintiff's] Equipment." (Doc. #73, p. 7.) Plaintiff alleges that Defendants are improperly profiting from their use of Plaintiff's Equipment, and that the FAQ "falsely represents to consumers that they have the legal 'right to Smash [their] trash.'" (Doc. #73, p. 17.)

In relevant part, the First Amended Complaint asserts the following claims: Count IV—False Advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); Count VI—Declaratory Judgment; and Count VIII—Unjust Enrichment. Plaintiff now moves for partial summary

---

[3] Defendants state that "the three Defendants are three separate entities that perform different functions." (Doc. #86, p. 7 n.1.) The Court acknowledges these differences. However, for purposes of consistency and clarity, the following refers to all Defendants collectively as "Defendants" where possible.

3

judgment on these counts pursuant to Federal Rule of Civil Procedure 56.[4]  Defendants oppose the motion and argue that summary judgment is not warranted on any claim.[5]  The parties' arguments are addressed below.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up).  If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted).  If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party." *Id.*  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III. DISCUSSION

### A. Count VI—Declaratory Judgment

Plaintiff moves for summary judgment on Count VI, which seeks a declaratory judgment. Plaintiff seeks a declaration that Defendants "do[] not have any legal right or ability to utilize [Plaintiff's] dumpsters and open top roll-off waste containers to provide mobile waste

---

[4] Plaintiff moves for summary judgment on the issue of liability on the unjust enrichment and false advertising claims, with damages to be decided at trial.  Section III addresses the three counts at issue in the same order as presented in the parties' briefs.  Other than the false advertising claim, the parties agree that Missouri substantive law is applicable.

[5] Defendants alternatively "request[] time to complete discovery pursuant to Rule 56(d), up to and including the August 19, 2022, discovery cutoff, to address the issues identified in Plaintiff's motion." (Doc. #86, pp. 71-72.)  For the reasons set forth below, the Court finds the motion should be denied and not deferred.

4

compaction services or for any other purpose and permanently enjoining [Defendants] from utilizing the Equipment." (Doc. #81, p. 20.) Defendants argue there are disputed facts that preclude the entry of summary judgment. As explained below, the Court agrees with Defendants.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). "A declaratory judgment is itself a remedy, not a cause of action." *Salau v. Denton*, 139 F. Supp. 3d 989, 1012 (W.D. Mo. 2015) (citations and quotation marks omitted). Therefore, a plaintiff cannot obtain a declaratory judgment without first establishing liability on "a viable underlying cause of action." *Id.*

Though unclear, Plaintiff's initial brief appeared to argue that its request for a declaratory judgment was based—at least in part—on Count VII, which asserts a cause of action for "breach of sub-bailment." (Doc. #73, p. 20.)[6] Count VII alleges that Plaintiff "is a bailor at will of the Equipment, and its business customers are bailees." (Doc. #73, ¶ 124.) As stated above, Plaintiff's Agreement provides that the customer "shall use the equipment only for its proper and intended purpose and shall not overload (by weight or volume), move or alter the equipment." (Doc. #86-14, p. 2.) Plaintiff alleges that its customers "have no legal right or ability to authorize a sub-bailment that exceeds the scope of th[is] bailment," and that Defendants'

---

[6] Among other things, Plaintiff's initial brief argued that it has the right to control how its business customers use the Equipment and cited 8 C.J.S. Bailments § 55. Defendants' opposition brief focused on the breach of sub-bailment claim. Plaintiff's reply contends it is not relying on a sub-bailment theory, but devotes several pages explaining the viability of that theory. The Court addresses the sub-bailment claim at this time based on the parties' briefing and to streamline the resolution of that claim moving forward.

5

compression of trash "is a material breach of any claimed sub-bailment . . . because it exceeds the 'proper and intended purpose'" of the bailment. (Doc. #86-14, ¶¶ 128-130.)

To prevail on a sub-bailment claim, a plaintiff must first establish the existence of an underlying bailment. *See, e.g.*, 8A Am. Jur. Bailments § 160 (Bailor's Right to Recover on Third Person's Contract With Bailee); *United States Fire Ins. Co. v. Paramount Fur Serv., Inc.*, 156 N.E.2d 121, 126-28 (Ohio 1959).[7] "The term 'bailment' in its ordinary legal sense signifies a contract resulting from the delivery of a thing by the bailor to the bailee on condition that it be restored to the bailor in accordance with his directions as soon as the purpose for which it was bailed is satisfied." *Temple v. McCaughen & Burr, Inc.*, 839 S.W.2d 322, 326 (Mo. App. E.D. 1992). "To constitute a bailment relationship there must be such delivery to the bailee as would entitle him to exclude the possession of anyone else, even the owner, for the period of the bailment." *Equity Mut. Ins. Co. v. Affiliated Parking, Inc.*, 448 S.W.2d 909, 914 (Mo. App. E.D. 1969).

In this case, there are genuine disputes of material fact on the existence of a bailment. Plaintiff's Agreement with its customers provides in part that "Customer shall provide safe, unobstructed access to the equipment on the scheduled collection day. Company may charge an additional fee for any additional collection service required by Customer's failure to provide access." (Doc. #86-14, p. 2.) Based on these terms, the current record does not show that Plaintiff has made "such delivery to [its customers] as would entitle [the customers] to exclude the possession of anyone else, even [Plaintiff], for the period of the bailment." *Equity Mut. Ins. Co.*, 448 S.W.2d at 914. Indeed, Plaintiff's reply acknowledges that "bailments are fact

---

[7] The parties' briefs, and the Court's independent research, indicates a dearth of case law on this cause of action.

specific." (Doc. #99, p. 53.) Summary judgment is not warranted because it is unclear whether Plaintiff's customers had exclusive control over the Equipment as required by Missouri law.

Even if Plaintiff had shown the existence of a bailment and a sub-bailment, there are disputed material facts as to whether Defendants breached the sub-bailment. Plaintiff's Agreement provides that its customers shall use the Equipment "only for its proper and intended purpose and shall not overload (by weight or volume), move or alter" the Equipment. (Doc. #86-14, p. 2.) Among other evidence, Plaintiff has filed two declarations (and supplements thereto with its reply brief) which state that Defendants' waste compaction services "are not a 'proper and intended purpose' of the Equipment." (Doc. #81-1, ¶ 18; Doc. #81-2, ¶ 9; Doc. #99-1, ¶ 10; Doc. #99-2, ¶ 12.) This evidence would support a finding that Defendants breached the sub-bailment.

Defendants have presented evidence to the contrary. Among other things, Defendants have presented evidence suggesting that the Smash Truck does not cause damage to open-top containers, and that other waste-hauling companies have engaged Defendants' franchisees to compact waste in containers they lease to customers. Defendants have also submitted a declaration from their expert witness, Steven Roensch, who opines "to a reasonable degree of engineering certainty that use of the Smash Truck is consistent with, and does not exceed, the intended design purpose of the open-top waste containers." (Doc. #86-4, ¶ 8.) Whether Defendants' compaction services exceed the "proper and intended purpose" of the Equipment, and/or whether those services overload or alter the Equipment, are disputed issues of fact. They

7

should be resolved by a jury, not at the summary judgment stage.[8]

Plaintiff's reply brief argues its "request for declaratory judgment is not premised on a sub-bailment theory, but . . . premised on its ownership of the Equipment, that it has every right and ability to dictate how and by whom its property is utilized." (Doc. #99, p. 51.) However, Plaintiff's reply does not expressly state the cause of action upon which its declaratory judgment claim is based. *Salau*, 139 F. Supp. 3d at 1012. Instead, Plaintiff refers "for instance" to several underlying claims, and to allegations, evidence, and "citation[s] of law." (Doc. #99, p. 51.)

As discussed throughout, Defendants have presented evidence that undermines—or at least mitigates—Plaintiff's claim that Defendants "do[] not have any legal right or ability to utilize [Plaintiff's] dumpsters and open top roll-off waste containers to provide mobile waste compaction services[.]" (Doc. #81, p. 20.) For example, the Smash Agreement between Smash KC (and other franchisees) and its customers provide that the customer "owns the Waste Materials and that Customer has the care, custody and control of all dumpster equipment . . . used to contain the Waste Materials[.]" (Doc. #86-9, p. 2.) Plaintiff's reply admits that "Smash My Trash customers warrant that they own the waste containers and confirm their control of the containers." (Doc. #99, p. 28.)

Plaintiff contends the Smash Agreement is "immaterial," but does not provide a meaningful argument in support. The Court finds the Smash Agreement is relevant and supports the defenses asserted by Defendants in this case. The Court further agrees with Defendants that if Plaintiff's customers do not have the right to make the representations in the Smash

---

[8] Plaintiff's reply brief cites the Wikipedia page for toilet seats to purportedly help explain "the normal and proper purpose of the Equipment." (Doc. #99, p. 47 n.5.) According to Plaintiff, "[o]ne could place a toilet seat around one's neck and wear it to dinner. But that does not transform the normal and proper purpose of a toilet seat, which of course is made to facilitate sitting on a toilet." (Doc. #99, p. 47 n.5.) Whatever the import of this analogy, it does not support the entry of summary judgment.

8

Agreement, then Plaintiff not only has a dispute with Defendants, but also with "its [own] customers[.]" (Doc. #86, p. 59.) For all these reasons—and regardless of the underlying cause of action upon which the declaratory judgment claim relies—the Court finds genuine issues of material facts precluding summary judgment. Therefore, Plaintiff's motion for summary judgment on Count VI is denied.[9]

## B. Count VIII—Unjust Enrichment

Plaintiff moves for summary judgment on Count VIII, which asserts a claim for unjust enrichment. Under Missouri law, an unjust enrichment claim has the following elements: "(1) [the plaintiff] conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Siebert v. Peoples Bank*, 632 S.W.3d 461, 471 (Mo. App. S.D. 2021) (citations and quotation marks omitted). The third element is "the most significant and the most difficult of the elements." *Roberts v. Roberts*, 580 S.W.3d 600, 605 (Mo. App. E.D. 2019). "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Id.* "Even if a benefit is conferred and appreciated, if no injustice results from the retention of the benefit, then no cause of action for unjust enrichment will lie." *Id.*

In this case, the Court assumes without deciding that Defendants received and appreciated the benefit of using Plaintiff's "Equipment to provide mobile waste compaction services." (Doc. #81, pp. 21-22.) However, there are disputed issues of material fact regarding whether Defendants received that benefit under "inequitable and/or unjust circumstances."

---

[9] Defendants argue that Plaintiff's "inability to demonstrate a bailment as a matter of law permits the court to render summary judgment in favor of [Defendants] on [Plaintiff's] substantive claim for 'breach of sub-bailment.'" (Doc. #86, p. 60 n.4.) The Court declines this invitation.

9

*Siebert*, 632 S.W.3d at 471. The following facts, viewed in a light most favorable to the non-moving party, preclude summary judgment in favor of Plaintiff.

Plaintiff's customers are authorized to use the Equipment for depositing and collecting waste. Plaintiff does not acquire title to the waste until it is loaded out of the Equipment and into Plaintiff's truck. After Plaintiff's customers deposit waste into the Equipment, but before Plaintiff acquires title to it, Defendants compress the waste. Defendants have presented evidence that the Smash Truck is designed "to minimize the risk of causing damage to open-top waste containers," and that they have not "received any information that confirms any damage [to an open-top container] was caused by a Smash Truck[.]" (Doc. #86, p. 34.) Defendants also present an affidavit from Justin Haskin, the President of Smash My Trash, LLC, and Smash Franchise Partners. In part, Mr. Haskin states that "[s]ome waste-hauling companies have actually engaged Smash My Trash franchisees to compact waste in the containers they lease to customers." (Doc. #86-2, ¶ 56.)

Under these facts, and the additional facts set forth by Defendants, a reasonably jury could conclude that Defendants are not benefitting from their use of Plaintiffs' Equipment under "unjust or inequitable circumstances." *Siebert*, 632 S.W.3d at 471. Therefore, the Court denies Plaintiff's motion for summary judgment on its unjust enrichment claim.

### C. Count IV—False Advertising

Count IV asserts a claim for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). As set forth above, the alleged false statements in this case were posted on Defendants' website under the title "Smashing FAQs." These statements are:

> Will my waste company let me Smash my trash? It's not their waste, it's yours. Well established legal doctrines protect your rights to manage your waste while under your control at your facility. This includes the right to Smash your trash.

(Doc. #81, p. 8.)

The elements of a false advertising claim under the Lanham Act are: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1182 (8th Cir. 2011) (citations and quotation marks omitted).

With respect to the first element, "a plaintiff can prove that advertising is false by showing either that it contains a statement that is 'literally false,' or a statement that, while literally true, implicitly conveys a false message, is misleading, or is likely to deceive consumers." *Id.* at 1185. "The standard for proving literal falsity is rigorous." *Id.* "[O]nly an *unambiguous* message can be literally false." *Id.* (emphasis in original). If a statement "can reasonably be understood as conveying different messages, [a] literal falsity argument must fail." *Id.* Whether a statement is literally false or misleading "is typically an issue of fact." *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 929 (E.D. Mo. 2010) (citations omitted).

In this case, there are factual and legal disputes that preclude summary judgment on the first element. The first sentence of the FAQ—"it's not their waste, it's yours"—is arguably literally true. The agreement between Plaintiff and its customers specify that Plaintiff "acquire[s] title to Waste Materials when they are loaded into [Plaintiff's] truck." (Doc. #86-14,

11

p. 1.) As such, until the waste is loaded onto Plaintiff's truck, a jury could find that the FAQ accurately states: "it's not [Plaintiff's] waste, it's [the customer's]" waste. (Doc. #86, p. 69.)

Plaintiff has also failed to show that the second sentence—"Well established legal doctrines protect your rights to manage your waste while under your control at your facility"—is literally false or misleading. As a matter of law, Plaintiff has not presented case law or other legal authority establishing that a customer lacks such rights. Indeed, as argued by Defendants, the law regarding a customer's right to smash their trash was and is unsettled. As a factual matter, how Plaintiff's customers may manage their waste—and whether they are allowed to use Defendants' services—presents factual disputes that are not amenable to summary judgment.

The final sentence—"This [the right to manage your own waste] includes the right to Smash your trash"—is also arguably not literally false or misleading. A reasonable jury could agree with Defendants that "because the customer's waste is still the customer's waste before pickup—being as it is in the customer's 'control' and positioned 'at [the customer's] facility'— such rights do 'include[] the right to Smash your trash,' which according to Plaintiff's own allegations, occurs before Plaintiff loads the customer's waste unto its truck." (Doc. #86, p. 70.)[10] Defendants have also presented evidence that the smashing process does not damage open top containers, which would further support the alleged "right to Smash" trash.

Because Plaintiff has failed to establish the FAQ is literally false or otherwise misleading, the Court need not address the remaining elements of the false advertising claim. Plaintiff's motion for summary judgment on Count IV is denied.

---

[10] Literal falsity may also be shown by "necessary implication." *Buetow*, 650 F.3d at 1185. A message is necessarily implied from the product's name and advertising if "the false message will necessarily and unavoidably be received by the consumer." *Id.* (citation and quotation marks omitted). For many of the reasons discussed above, Plaintiff has not shown falsity by way of necessary implication.

12

## IV.  CONCLUSION

Accordingly, Plaintiff Allied Services, LLC's Motion for Partial Summary Judgment (Doc. #80) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough  
STEPHEN R. BOUGH  
UNITED STATES DISTRICT JUDGE

Dated:  July 1, 2022